125 Cal.Rptr.2d 879 (2002)
102 Cal.App.4th 954
AMERICAN VANTAGE COMPANIES, Plaintiff and Appellant,
v.
TABLE MOUNTAIN RANCHERIA, Defendant and Respondent.
No. F038121.
Court of Appeal, Fifth District.
October 7, 2002.
Rehearing Granted November 1, 2002.
*880 Jeffer, Mangels, Butler & Marmaro, Jeffrey W. Shopoff and Gregory S. Cavallo, San Francisco, for Plaintiff and Appellant.
Sonnenschein, Nath & Rosenthal, Paul E.B. Glad, Gary A. Hernandez, San Francisco, and Paula M. Yost, Lang, Richert & Patch and Val W. Saldana for Defendant and Respondent.
Rehearing Granted November 1, 2002. See 126 Cal.Rptr.2d 849.

OPINION
LEVY, J.
Appellant, American Vantage Companies, challenges the dismissal of its complaint for breach of contract filed against Table Mountain Rancheria (Table Mountain), a federally recognized Indian tribe. The trial court concluded that the complaint was completely preempted by federal law, specifically the Indian Gaming Regulation Act (IGRA), in that appellant's claims threatened to directly affect or interfere with the tribe's gaming operations.
With respect to the regulation of Indian gaming activity, the IGRA completely preempts state law. However, the contracts at issue here are not, on their face, subject to the IGRA. Rather, only state law claims are involved. Consequently, appellant's complaint does not raise a federal question. Accordingly, the trial court erred in granting Table Mountain's motion to dismiss for lack of state court jurisdiction.

STATEMENT OF THE CASE AND FACTS
Table Mountain retained appellant, a Nevada corporation, in 1990 to supervise the development and operation of Table Mountain's casino. Between 1990 and 1993, appellant and Table Mountain entered into various management contracts. As a non-Indian contractor, appellant was required to secure the National Indian Gaming Commission's (NIGC) approval before it could manage all or part of Table Mountain's casino pursuant to these contracts. (25 U.S.C. § 2711, subd. (a).)
In 1994 the NIGC initiated an enforcement action against appellant. According to the NIGC, the original management contract improperly delegated gaming authority to appellant. In 1996, appellant, Table Mountain and the NIGC resolved this matter and entered into a settlement agreement. As part of this settlement, appellant acknowledged that it had participated in decision making at the casino and agreed to pay a $500,000 fine. Further, appellant agreed to terminate the existing management contract and to enter into a termination agreement and a consulting agreement with Table Mountain.
The termination agreement, executed contemporaneously with and as part of the settlement agreement, cancelled the existing management contract in exchange for a payment of $16,800,000. It also included a provision that waived Table Mountain's sovereign immunity for purposes of implementing and enforcing this agreement.
The second contract executed pursuant to the settlement, the consulting agreement, obligated appellant to provide technical assistance, training and advice to Table Mountain in the operation of its gaming activities in exchange for a monthly fee. Again, Table Mountain agreed to waive sovereign immunity for enforcement purposes. The NIGC reviewed both agreements and determined that they did not require NIGC approval. As noted by the NIGC, the IGRA limits its authority to management contracts and collateral agreements to management contracts.
Vern Castro, Table Mountain's chairman, executed both of these agreements on behalf of the tribe. However, in 1998 the "General Council" ousted Castro in a recall election. The new chairperson assumed physical control of the tribal office *881 in May 1999. Shortly thereafter, Table Mountain notified appellant that it was terminating the contracts and that no further payments would be made.
In June 1999, appellant filed a complaint for breach of contract in the United States District Court.[1] Appellant asserted federal jurisdiction based on diversity. In response, Table Mountain filed an answer and compulsory counterclaims. Table Mountain took the position that the court had "federal question" subject matter jurisdiction over the dispute in that it involved the validity of certain contracts between an Indian tribe and a non-Indian party.
The district court dismissed the case for lack of subject matter jurisdiction. The court concluded diversity could not serve as a basis of jurisdiction because a tribe is not a citizen of any state for that purpose.[2] With respect to Table Mountain's counterclaims, the court determined that they did not arise under the laws of the United States. Rather, all of the claims for relief advanced by Table Mountain were based on state law.
Thereafter, appellant filed the underlying complaint against Table Mountain in the superior court seeking damages for breach of both the termination agreement and the consulting agreement. In response, Table Mountain moved to quash/dismiss the complaint on jurisdictional grounds. Since the dispute involved Indian gaming, Table Mountain argued that it was completely preempted by federal law. Table Mountain further asserted that it had not waived its sovereign immunity.
The trial court granted Table Mountain's motion. In the court's opinion, appellant's claims essentially questioned the validity of the tribe's decision to terminate gaming related contracts. Accordingly, whether appellant acted as a manager or not, the contracts themselves related to the governance of Table Mountain's gaming activities. Consequently, the court found appellant's claims were completely preempted by the IGRA.

DISCUSSION
Generally, a plaintiff can avoid federal jurisdiction by relying exclusively on state law. (Caterpillar Inc. v. Williams (1987) 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318.) Absent diversity of citizenship, the presence or absence of federal question jurisdiction is governed by the "`well-pleaded complaint rule,'" i.e., federal jurisdiction exists only when a federal question is presented on the face of the plaintiffs properly pleaded complaint. (Ibid.)
However, on occasion the preemptive force of a statute is so extraordinary that it "`converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" (Caterpillar Inc. v. Williams, supra, 482 U.S. at p. 393, 107 S.Ct. 2425.) Under this exception, known as the complete preemption doctrine, any claim purportedly based on the preempted state law is considered, from its inception, to be a federal claim and therefore arises under federal law. (Ibid.)
Appellant first raises a procedural issue with respect to the use of the complete preemption doctrine in state court. According to appellant, complete preemption can be properly invoked only in federal *882 court to determine federal removal jurisdiction. Therefore, appellant argues, the trial court could not properly dismiss the complaint on this ground.
However, if the complete preemption doctrine applies, the state court does not have jurisdiction over the action. Although generally such a matter would be removed to the federal court, it does not follow that such a result is required. Here the federal court had already found that it lacked subject matter jurisdiction. Consequently, once the trial court determined that it too lacked jurisdiction, dismissal was its only logical choice.
The IGRA provides a comprehensive scheme for regulating gaming on Indian lands. (Great Western Casinos, Inc. v. Morongo Band of Mission Indians (1999) 74 Cal.App.4th 1407, 1425, 88 Cal.Rptr.2d 828.) It establishes federal gaming standards and leaves the states without a significant role unless one is negotiated through a tribal-state compact. (25 U.S.C. § 2702(3); Gaming Corp. of America v. Dorsey & Whitney (8th Cir.1996) 88 F.3d 536, 547.) The NIGC, a federal commission established by the IGRA, oversees regulation, licensing, background checks of key employees, and other facets of gaming. (Id. at p. 544.) It is the NIGC that must approve license applications, management contracts, and tribal gaming ordinances. (Ibid.)
Based on its text and structure, legislative history and jurisdictional framework, the IGRA has been construed as having the requisite extraordinary preemptive force necessary to satisfy the complete preemption exception to the well pleaded complaint rule. (Gaming Corp. of America v. Dorsey & Whitney, supra, 88 F.3d at p. 547.) Thus, claims that fall within the preemptive scope of the IGRA, i.e., those that concern the regulation of Indian gaming activities, are considered to be federal questions.
However, not every contract between a tribe and a non-Indian contractor is subject to the IGRA. (Iowa Management & Consultants v. Sac & Fox Tribe (8th Cir.2000) 207 F.3d 488, 489; Calumet Gaming Group-Kansas v. Kickapoo Tribe (D.Kan.1997) 987 F.Supp. 1321, 1325.) Rather, IGRA regulation of contracts is limited to management contracts. (25 U.S.C. § 2711.)
As noted above, appellant's complaint alleges state law causes of action for breach of contract and seeks money damages as a remedy. Further, these contracts are not, on their face, subject to the IGRA. Neither a termination agreement nor a consulting agreement requires NIGC approval. Alternatively, if, as alleged by Table Mountain, the consulting agreement is in fact an unapproved management agreement, it is not subject to IGRA regulation on the ground it is void. (Gallegos v. San Juan Pueblo Business Dev. Bd. Inc. (D.N.M.1997) 955 F.Supp. 1348, 1350.) Thus, the IGRA need not be interpreted or applied to resolve this dispute. Consequently, appellant's claims for breach of contract do not raise a federal question. (Calumet Gaming Group-Kansas v. Kickapoo Tribe, supra, 987 F.Supp. at p. 1325.)
Nevertheless, Table Mountain argues that any claim based on the contracts at issue is completely preempted by federal law. In support of its position, Table Mountain points to the court's comment in Great Western Casinos, Inc. v. Morongo Band of Mission Indians, supra, that "federal courts have exclusive jurisdiction to review issues involving Indian gaming activities." (74 Cal.App.4th at p. 1426, 88 Cal.Rptr.2d 828.)
In Great Western Casinos, Inc., the causes of action all related to the Morongo Band's allegedly wrongful termination of plaintiffs contract to manage the tribe's *883 gaming operations. Such management contracts are subject to the IGRA. (Gaming Corp. of America v. Dorsey & Whitney, supra, 88 F.3d at p. 544.) Thus, the Great Western court's holding that the state trial court lacked jurisdiction over that particular lawsuit was correct. However, the court stated the IGRA preemption rule too broadly.
In Gaming Corp. of America v. Dorsey & Whitney, supra, the Eighth Circuit extensively analyzed the scope of federal preemption over Indian gaming activities. The court concluded that "[t]hose causes of action which would interfere with the nation's ability to govern gambling should fall within the scope of IGRA's preemption of state law." (88 F.3d at p. 550.) Potentially valid state claims are those that would not interfere with the nation's governance of gaming. (Ibid.) Thus, to be preempted, the claim must do more than involve Indian gaming activities. The claim must intrude on the tribe's control of its gaming enterprise. Accordingly, appellant's claims must be analyzed in this context.
As noted above, appellant's claims are based on alleged breaches of contracts that the NIGC determined were not subject to the IGRA. Further, appellant is not requesting that Table Mountain be compelled to reinstate the consulting contract. Rather, appellant is seeking money damages only. Thus, appellant's claim does not attempt to undermine Table Mountain's decision to terminate its business relationship with appellant. Consequently, it does not diminish Table Mountain's control over its gaming operation.
Table Mountain counters this argument by noting that appellant is seeking "enormous" money damages. Table Mountain then reasons that this "princely sum ... would no doubt adversely impact the operations of the Tribe's only economic asset, and shape the Tribe's current and future conduct with respect to the operation of its casino." However, Table Mountain is equating profitability with control. If appellant were awarded the requested damages, the claim would undoubtedly decrease Table Mountain's net profits. Nevertheless, Table Mountain's ability to autonomously govern its gaming operation would remain intact.
In sum, the contracts in dispute are not subject to IGRA regulation. Further, appellant's claims do not interfere with Table Mountain's ability to control its gaming enterprise. Therefore, appellant's claims are not completely preempted by the IGRA.
Table Mountain poses an alternative ground for affirming the trial court's dismissal of appellant's complaint. Table Mountain notes that, as a federally recognized Indian tribe, it possesses the common law immunity from suit traditionally enjoyed by sovereign powers. (Great Western Casinos, Inc. v. Morongo Band of Mission Indians, supra, 74 Cal.App.4th at p. 1419, 88 Cal.Rptr.2d 828.) Table Mountain acknowledges that such immunity can be waived and that the contracts at issue purport to do so. Nevertheless, Table Mountain argues that these particular waivers were ineffective.
A judgment that is correct under an applicable legal theory will not be reversed merely because the trial court followed an erroneous path of reasoning. (Cline v. Yamaga (1979) 97 Cal.App.3d 239, 246, 158 Cal.Rptr. 598.) However, where the theory rests on determinations of fact, the evidence on the facts is conflicting, and the conflicts were not resolved by the trial court's express or implied findings, an appellate court will not employ that theory to affirm the judgment. (Id. at p. 247,158 Cal.Rptr. 598.)
*884 Here, the trial court did not make a final ruling on the immunity issue. Rather, the court dismissed the complaint solely on jurisdictional grounds. No factual findings were made on the validity of the waivers. Further, appellant strongly disagrees with Table Mountain's claim that the evidence is not in dispute. Appellant additionally notes that discovery is incomplete. Under these circumstances, it is not appropriate for this court to affirm the judgment on sovereign immunity grounds. Rather, this is an issue to be resolved by the trier of fact.

DISPOSITION
The judgment is reversed. Costs on appeal are awarded to appellant.
WE CONCUR: ARDAIZ, P.J., and DIBIASO, J.
NOTES
[1] Table Mountain's request for this court to take judicial notice of the federal complaint and related documents filed September 26, 2001, is granted.
[2] The Ninth Circuit Court of Appeals recently affirmed this ruling (American Vantage Companies, Inc. v. Table Mountain Rancheria (9th Cir.2002)) 292 F.3d 1091.