[No. D046568. Fourth Dist., Div. One. Mar. 1, 2006.]

CAMPO BAND OF MISSION INDIANS, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CELESTE BLUEHAWK, Real Party in Interest.

## COUNSEL

Steven M. O'Neal for Petitioner.

No appearance for Respondent.

Spencer Busby & Associates, Spencer S. Busby and Oliver Chami for Real Party in Interest.

## OPINION

**McINTYRE, J.**—The Campo Band of Mission Indians (the Tribe) entered into a compact with the State of California (the State) relating to its operation of gambling facilities in the State (the Compact); in the Compact, the Tribe agreed to comply with certain standards relating to public health and safety at its facilities, to maintain certain public liability insurance for personal injury claims by patrons injured at the facilities and to adopt a tort liability ordinance setting forth the terms and conditions under which it would waive its sovereign immunity relating to such claims and the procedures for processing those claims. The Tribe adopted a regulation that requires a

claimant to comply with certain procedures and, subject to such compliance, provides for arbitration of the patron's claim.

Here, the Tribe concluded that an injured patron failed to comply with the procedural prerequisites to arbitration and refused to participate in arbitration of her claim; the patron filed this action seeking to compel arbitration, which the superior court granted. The fundamental issue in this case is whether the superior court had subject matter jurisdiction to order the Tribe to arbitration. We find that the Compact included a waiver of the Tribe's tribal sovereign immunity relating to patron claims for negligence resulting in personal injury up to specified limits, and thus the superior court had limited subject matter jurisdiction over the patron's claim against the Tribe, but the superior court erred in determining the compliance issue itself rather than submitting that issue for determination in arbitration. Accordingly, we grant the petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The Tribe and the State entered into the Compact pursuant to the Indian Gaming Regulatory Act of 1988 (18 U.S.C. § 1166 et seq.; 25 U.S.C. § 2701 et seq. (the Act).) In relevant part, the Compact requires that the Tribe: "[c]arry no less than five million dollars ($5,000,000) in public liability insurance for patron claims, and that the Tribe provide reasonable assurance that those claims will be promptly and fairly adjudicated, and that legitimate claims will be paid; provided that nothing herein requires the Tribe to agree to liability for punitive damages or attorneys' fees. . . . [T]he Tribe shall adopt and make available to patrons a tort liability ordinance setting forth the terms and conditions, if any, under which the Tribe waives immunity to suit for money damages resulting from intentional or negligent injuries to person or property at the Gaming Facility or in connection with the Tribe's Gaming Operation, including procedures for processing any claims for such money damages; provided that nothing in this Section shall require the Tribe to waive its immunity to suit except to the extent of the policy limits set out above."

Pursuant to this provision (section 10.2(d)) of the Compact, the Tribe promulgated gaming regulation 004, which provides in relevant part:

"V. Due Diligence

"In cooperation with the [Tribe's insurer] . . . , and subject to the limits of the public liability insurance policy, the Tribe shall exercise due diligence to ensure that patron claims are promptly and fairly adjudicated and that legitimate claims are paid. [¶] . . . [¶]

"VII. Initial Processing of Patron Claims

"The patron allegedly suffering the injury to person or property must present his or her claim, in detail and in writing within thirty (30) days of the injury, to the Executive Committee. The Executive Committee shall promptly forward a copy of the patron's claim to the Insurance Company and to the Gaming Operation. . . . A patron may request resolution of his or her claim directly by the Tribe in accordance with the Process outlined in Section IX of this Regulation only after exhausting the claims processes of the Insurance Company and the Gaming Operation without reaching a settlement of the claim.

"VIII. Sovereign Immunity

"Except as stated in this Section, the sovereign immunity of the Tribe is in no manner waived by this Regulation or by any action of the Executive Committee or employees of the Tribe acting pursuant to this Regulation. In the event the Executive Committee grants a request for arbitration in accordance with Section IX of this Regulation and the patron is successful in obtaining an arbitration award, the Tribe hereby consents to waive its sovereign immunity from suit for the limited and sole purpose of enforcing the arbitration award [on the following conditions:] [¶] . . . [¶]

"C. The suit must be an action to enforce the arbitration award and the relief sought is limited to specific performance. Any waiver granted pursuant to this Section shall not be effective as to any patrons or other persons seeking monetary damages, declaratory relief, injunctive relief and/or any other forms of relief other than such specific performance. [¶] . . . [¶]

"E. The suit must be brought in: [¶] 1. the judicial forum or other dispute resolution system established by the Tribe as having adjudicatory jurisdiction over patron claims, or, in the absence of any such forum [¶] 2. the Superior Court for the State of California for the County of San Diego in San Diego, California.

"IX. Dispute Resolution

"A. A patron who exhausts the claims processes of the Insurance Company and the Gaming Operation without reaching a settlement of his or her claim may request arbitration of his or her claim. The patron allegedly suffering the injury . . . must submit a request for arbitration in writing to the Executive Committee. . . . The request must be submitted to the Executive Committee

within thirty (30) days from the date on which the patron receives the later of the final decisions from the Insurance Company and the Gaming Operation.

"B. The Executive Committee shall have thirty (30) days to either grant or deny the request for arbitration. If the Executive Committee fails to grant or deny the request within thirty (30) days, the request shall be deemed to have been denied. The Executive Committee shall notify the patron in writing of its decision and the reasons for its decision by registered mail with return receipt requested. . . .

"C. If the Executive Committee grants the patron's request for arbitration, the patron and the Executive Committee shall first meet and confer in a good faith attempt to resolve the dispute through negotiation . . . .

"D. If the dispute is not resolved to the satisfaction of the patron within thirty (30) days after the first meeting, the dispute shall be submitted to mandatory binding arbitration.

"E. Arbitration shall be administered by the American Arbitration Association in accordance with its Accident Claims Arbitration Rules. . . ."

In March 2004, Celeste Bluehawk sued the Tribe in superior court, alleging that she was injured in December 2002, when she slipped and fell on a wet floor at the Tribe's Golden Acorn casino. The Tribe moved to dismiss Bluehawk's action, arguing that it had sovereign tribal immunity from such a suit, that its promulgation of regulation 004 did not constitute a waiver of its immunity to suit in state court and that accordingly the state court lacked subject matter jurisdiction. Bluehawk argued that regulation 004 included a waiver of the Tribe's sovereign immunity or, alternatively, that the court could and should exercise jurisdiction over the matter to permit discovery relating to the waiver issue. She also contended that the regulation was (1) void because it conflicted with the claims requirement of the Compact and (2) unduly restrictive and an unconscionable abrogation of her legal rights. Finally, she contended that in any event, she had complied with the procedures set forth therein.

The trial court agreed with the Tribe's contention that it lacked subject matter jurisdiction over Bluehawk's claims and dismissed her complaint. It also held, however, that Bluehawk had complied with the claims procedures set forth in regulation 004 and that her opportunity to request arbitration thereunder had not run because the Tribe's insurer had never notified her of its final decision concerning her claim. The court indicated that the parties

should engage in settlement negotiations and if those were unsuccessful, "arbitration was the next step."

Thereafter, Bluehawk attempted to negotiate with the Tribe's insurer, but without success, and in September 2004, she sent a letter requesting arbitration pursuant to regulation 004. The Tribe responded that its executive committee was considering whether it was willing to "waive Ms. Bluehawk's lack of compliance with Regulation 004" and that it would notify her of the decision by letter. In late December 2004, the Tribe sent Bluehawk a letter stating that it had previously rejected her claim on the grounds that it was "untimely, defective and non-compliant with [regulation 004]."

Several days later, Bluehawk filed another lawsuit for premises liability against the Tribe in state court, although she also requested that the Tribe stipulate to submit the matter to arbitration. In February 2005, the Tribe filed a motion to dismiss Bluehawk's complaint, again on the basis of tribal sovereign immunity. Bluehawk filed a motion to compel arbitration of her claim, which was calendared to be heard concurrently with the motion to dismiss.

Based on a consideration of full briefing of both motions by the parties, the superior court granted Bluehawk's motion to compel arbitration, finding that by virtue of its agreement in the Compact to waive its immunity from suits for money damages and to provide reasonable assurance that patron claims would be promptly and fairly adjudicated, the Tribe waived its sovereign immunity for the purposes of a suit to compel arbitration. The court also concluded that although regulation 004 provided no recourse or appeal for a claimant whose request for arbitration is denied or deemed denied, that aspect of the regulation was inconsistent with the Tribe's obligations under the Compact to promptly and fairly adjudicate liability claims and pay legitimate claims.

The Tribe filed a petition for a writ of mandate in this court, arguing the superior court lacked jurisdiction to make such an order or, alternatively, that the court erred in compelling arbitration of Bluehawk's claim because there was no evidence to support a finding that she had complied with the procedural requirements of regulation 004. We issued an order to show cause.

## DISCUSSION

1. *General Principles Affecting State Court Jurisdiction*

A. *Tribal Sovereign Immunity Principles*

Under federal law, an Indian tribe is a sovereign authority and, as such, has tribal sovereign immunity, not only from liability, but also from

suit. (*Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 57–58 [56 L.Ed.2d 106, 98 S.Ct. 1670]; *Tamiami Partners v. Miccosukee Tribe of Indians* (11th Cir. 1995) 63 F.3d 1030, 1050 [recognizing that allowing a suit against a tribe to go to trial would render tribal sovereign immunity "meaningless"].) Pursuant to tribal sovereign immunity principles, an Indian tribe is subject to suit only where Congress has so authorized or where the Tribe has waived its immunity by consenting to suit. (*Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.* (1998) 523 U.S. 751, 754 [140 L.Ed.2d 981, 118 S.Ct. 1700].) Absent such authorization or consent, the courts do not have subject matter jurisdiction over suits against a tribe. (*Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1182 [127 Cal.Rptr.2d 706].)

### B.  *Congressional Authorization*

■   The Act authorizes tribal gaming and allows state governments to have a role in the regulation of such gaming. (*Artichoke Joe's California Grand Casino v. Norton* (9th Cir. 2003) 353 F.3d 712, 715.) The Act, which preempts state law as to the governance of gaming activities on Indian lands (*Gaming Corp. of America v. Dorsey & Whitney* (8th Cir. 1996) 88 F.3d 536, 544 (*Dorsey & Whitney*); *American Vantage Companies v. Table Mountain Rancheria* (2002) 103 Cal.App.4th 590, 597 [126 Cal.Rptr.2d 849]), nonetheless provides that a tribe may operate class III gaming (which includes casino and slot machine gambling (18 U.S.C. § 1166(c)(2))) on its land only if (1) the state where the land is located permits such gaming and (2) the Secretary of the Interior has approved a gaming compact entered into between the tribe and the state. (*Artichoke Joe's California Grand Casino v. Norton, supra,* 353 F.3d at pp. 715–716; 25 U.S.C. § 2710(d)(1).)

The California Constitution authorizes class III gaming on Indian lands within the state (Cal. Const., art. IV, § 19, subd. (f)) and the State entered into the Compact with the Tribe relating to the Tribe's class III gaming operations pursuant to such authorization. Thus, in accordance with the Act, the State may apply its laws or assert jurisdiction in matters concerning Indian gaming, but only to the extent provided in the Compact. (*Dorsey & Whitney, supra,* 88 F.3d at p. 546.)

### C.  *Tribal Consent/Waiver of Immunity*

As noted *ante*, a tribe may consent to suit and thus waive its tribal sovereign immunity. However, such consent cannot be implied and, while no talismanic words are required, it must nonetheless be "clear." (*C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.* (2001)

532 U.S. 411, 414–420 [149 L.Ed.2d 623, 121 S.Ct. 1589]; *Big Valley Band of Pomo Indians v. Superior Court* (2005) 133 Cal.App.4th 1185, 1193 [35 Cal.Rptr.3d 357].) If the tribe has consented to suit, any conditional limitation imposed on its consent must be strictly construed and applied. (*Missouri River Services v. Omaha Tribe of Nebraska* (8th Cir. 2001) 267 F.3d 848, 852.)

## 2. *Did the Superior Court Have Subject Matter Jurisdiction to Order Arbitration of Bluehawk's Claim?*

On a motion asserting sovereign immunity as a basis for dismissing an action for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists. (*Garcia v. Akwesasne Housing Authority* (2nd Cir. 2001) 268 F.3d 76, 84; *Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407, 1418 [88 Cal.Rptr.2d 828].) In the absence of conflicting extrinsic evidence relevant to the issue, the question of whether a court has subject matter jurisdiction over an action against an Indian tribe is a question of law subject to our de novo review. (*Warburton/Buttner v. Superior Court, supra,* 103 Cal.App.4th at p. 1180.)

Here, the superior court concluded that (1) the Tribe's agreement with the State included its consent to (or waiver of tribal sovereign immunity from) a suit compelling arbitration of patron claims; and (2) insofar as regulation 004 provides no recourse or avenue of appeal for a claimant whose request for arbitration is denied or deemed denied, it was inconsistent with the Compact, which required the Tribe to provide assurance that patron claims would be promptly and fairly adjudicated. The Tribe contends that the Compact does not include any waiver of its immunity from suits for money damages and that regulation 004 contains only a limited waiver of immunity that is applicable only where the claimant has complied with the procedures specified in the regulation and obtained an award against it in arbitration. We find that the Tribe's consent was broader than it contends, but narrower than the superior court found.

### A. *Did the Tribe Waive Its Tribal Sovereign Immunity?*

As described *ante*, in the Compact the Tribe agreed to comply with certain standards relating to public health and safety at its facilities, maintain specified public liability insurance for personal injury negligence claims by patrons claiming to have been injured at those facilities and adopt a tort liability ordinance setting forth the terms and conditions, if any, under which it would waive its sovereign immunity relating to such claims and the

procedures for processing those claims. The Compact specifically excludes liability for punitive damages, intentional acts not covered by the insurance policy and attorney fees, but specifies that otherwise the Tribe's agreement with the State did not "waive its immunity to suit *except to the extent of the policy limits and insurance coverage [provided for therein]*." (Italics added.)

By virtue of this language in the Compact, the Tribe unambiguously waived its immunity relating to patron claims for negligent acts to the extent of the insurance coverage it contractually obligated itself to obtain for such claims. Any contrary interpretation would ignore the italicized language agreed to by the Tribe in the Compact. (See *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla., supra,* 532 U.S. at pp. 418–422 [holding that the inclusion of an arbitration clause providing for judicial enforcement of the resulting award in a contract entered into by a tribe necessarily constituted a waiver of its tribal immunity despite the absence of any express waiver of sovereign immunity in the contract because a contrary interpretation would render the arbitration clause meaningless].) Although this language clearly does limit the amount of damages for which the Tribe can be held liable in an action against it, we disagree with the dissent's assertion that that language (which specifically refers to a waiver of immunity) can be read as merely a limitation on such damages and nothing more.

The Tribe argues, however, that other language in the Compact requiring it to establish a tort liability ordinance "setting forth the terms and conditions, if any, under which it waives immunity to suit" specifically negates the existence of *any* waiver of sovereign immunity therein, instead leaving the issue of waiver to be left solely to the Tribe's discretion in establishing the ordinance. There are several problems with the Tribe's argument. First, the Tribe reads the quoted language too generously in its own favor. The words "if any" in the quoted passage merely modify the words that immediately precede them ("terms and conditions") and thus simply indicate that the Tribe may, or may not, establish terms or conditions that an injured patron must comply with to pursue a claim against the Tribe. More importantly, the Tribe's assertion that it can, in imposing such terms and conditions, essentially revoke (or render totally ineffective) the waiver of tribal sovereign immunity set forth in the Compact is contrary to its express agreement therein limiting its waiver only relating to specified types of claims and the extent of the required insurance coverage.

The Tribe points to regulation 004 and argues that its waiver of tribal sovereign immunity was limited to suits to enforce arbitration awards against it by claimants who have complied with the procedures set forth therein. However, although the regulation on its face provides only for arbitration of the merits of a claimant's claims, this limitation conflicts with the Compact,

in which the Tribe agreed to obtain liability insurance and create a set of procedures by which patrons' negligence claims would be considered and resolved. In accordance with the terms of the Compact, the compact is controlling over the Tribe's regulation in the event of a conflict between them. Having consented to waive its tribal sovereign immunity in the Compact, the Tribe cannot, in drafting regulation 004, render its obligations totally illusory by retaining the sole and unfettered discretion to determine whether a claimant has complied with the procedural requirements set forth in its regulation. For these reasons, we conclude that the Tribe has waived its tribal sovereign immunity as to patron negligence claims against it up to the limits of the insurance it is required to maintain under the Compact.

**B.** *Did the Superior Court Have Jurisdiction to Compel Arbitration of Bluehawk's Claim on its Merits?*

Having concluded that the Tribe waived its tribal sovereign immunity relating to a patron's negligent personal injury claims up to the amount of the required insurance coverage, we must also consider whether that waiver included a right to be sued *in state courts* relating to the viability of the patron's claims. We answer this question in the negative.

A waiver of immunity " 'is altogether voluntary' " on the part of the tribe and thus the tribe " 'may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted . . . .' " (*Amer. Indian Agr. Credit v. Stand. Rock Sioux Tribe* (8th Cir. 1985) 780 F.2d 1374, 1378, quoting *Beers v. State of Arkansas* (1857) 61 U.S. 527, 529 [15 L.Ed. 991].) Here, although the Tribe waived its sovereign immunity relating to certain patron claims, regulation 004 establishes arbitration as the forum in which those claims are to be resolved. As we have concluded that the Tribe does not have the unilateral right to determine whether a patron has complied with the procedural prerequisites to pursuing the merits of his or her claim in arbitration, we also conclude that, where the Tribe contends that a claimant has not complied with regulation 004's procedural prerequisites, that issue must be determined in the forum that the Tribe has chosen for determination of the viability of claims against it, to wit, arbitration. (See *Rosebud Sioux v. Val-U Const. Co.* (8th Cir. 1995) 50 F.3d 560, 562.)

For these reasons, we direct the superior court to vacate its order compelling the Tribe to submit to arbitration of the merits of Bluehawk's claim and

to issue an order compelling the Tribe to participate in an arbitration in which the issues relating to the viability of Bluehawk's claims are addressed.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to (1) vacate its order finding that Bluehawk complied with the procedural requirements of regulation 004 and compelling the Tribe to arbitrate the merits of Bluehawk's claim and (2) issue a new order compelling the Tribe to submit the issue of Bluehawk's procedural compliance to arbitration and, if the arbitrators conclude that Bluehawk in fact complied with the procedural requirements, to require the Tribe to also arbitrate the merits of Bluehawk's claim. In all other respects, the petition is denied. The stay issued on June 10, 2005 will be vacated when the opinion is final as to this court. Bluehawk is entitled to costs in the writ proceeding.

McDonald, J., concurred.

**BENKE, Acting P. J.,** Dissenting.—I respectfully dissent.

1. *The Tribe Did Not Waive Its Sovereign Immunity from Suit in the Compact.*

The majority concludes that by agreeing to carry a $5 million insurance policy, the Campo Band of Mission Indians (the Tribe) unambiguously waived its sovereign immunity to suit up to that dollar limit. (Maj. opn., *ante* p. 184.) I disagree.

The Tribe is required to adopt and make available an ordinance setting forth the terms and conditions, if any, under which the Tribe waives immunity. The Tribe must adopt such an ordinance, *"provided that nothing in this Section shall require the Tribe to waive its immunity to suit except to the extent of the policy limits set out above."* (Tribal-State Compact Between the State of California and the Campo Band of Mission Indians (Compact), § 10.2(d), italics added.) The common meaning of the word "provided" is "on the condition or understanding (that)." (The Random House Dict. of the English Language (2d ed.) p. 1556.) In the full context then of section 10.2(d) what this final language means is that when the Tribe sets out by ordinance the terms and conditions, if any, under which it will waive liability to suit, nothing it sets forth in those terms and conditions can be interpreted so as to require the Tribe to waive immunity for more than the $5 million, the limits of its liability policy. The final language is both notice to the public and a

protection operating to assure the Tribe that if it posts the required $5 million insurance policy, it cannot be held liable for more than the limits of the policy. This is a limitation on damages. It is not a waiver of sovereign immunity.

### 2. *Gaming Regulation 004 Does Not Waive Sovereign Immunity.*

Having concluded the Tribe did not waive its sovereign immunity in the Compact, the next question is whether the Tribe did so in its ordinance. Again, I conclude it did not.

Gaming regulation 004 (regulation) "sets forth the terms and conditions under which patrons of the [Tribe's] Gaming Facility or Gaming Operation may pursue claims for money damages resulting from injuries to person or property occurring at the Tribe's Gaming Facility." The regulation states that in the event of a conflict between it and the Indian Gaming Regulatory Act of 1988 (IGRA) (25 U.S.C. § 2701 et seq.) or the Compact, the IGRA and Compact prevail.

The regulation further states that in cooperation with the company providing the Tribe's liability insurance, the Tribe will exercise due diligence to ensure patron claims are promptly and fairly adjudicated and that legitimate claims are paid.

The regulation requires a patron present a claim for injury in detail and in writing to the executive committee within 30 days of the injury. The committee forwards the claim to the gaming operation and the insurance company. The gaming operation may resolve the claim up to the deductible amount specified in the Tribe's liability insurance policy. If the gaming operation does not do so, then the claim is handled by the insurance company.

If the patron is unable to reach a settlement with the insurance company or gaming operation within 30 days of the receipt of a letter from the insurance company or gaming operation stating a final decision on the claim, the patron may submit a request for arbitration to the executive committee. The executive committee has 30 days to either grant or deny the request. If arbitration is granted, the regulation requires the patron and the executive committee meet and confer in an attempt to resolve the dispute. If the dispute is not resolved, the matter is submitted to binding arbitration. Arbitration is to be administered by the American Arbitration Association in accordance with its accident claims arbitration rules.

Any award by the arbitrator may be submitted for enforcement to a "court of competent jurisdiction." (Reg., § IX.G.) Pursuant to the regulation, this means "the judicial forum or other dispute resolution system established by the Tribe as having adjudicatory jurisdiction over patron claims." (Reg., § VIII.E.1.)[1] If no such forum exists, then the matter must be brought in the Superior Court of San Diego County. (Reg., § VIII.E.2.)

As to waiver of sovereign immunity, the regulation states that except as stated in that regulation, the sovereign immunity of the Tribe is in no manner waived by the regulations or any actions of the Tribe acting pursuant to the regulation. Section VIII of the regulation states: "In the event the Executive Committee grants a request for arbitration in accordance with Section IX of this Regulation and the patron is successful in obtaining an arbitration award, the Tribe hereby consents to waive its sovereign immunity for the limited and sole purpose of enforcing the arbitration award [subject to certain conditions]."

The regulation appears to clearly state that the Tribe waives its sovereign immunity from suit solely with regard to the *enforcement* of an award obtained in arbitration. The necessary corollary of this limitation on waiver of immunity is that the Tribe has not clearly waived it sovereign immunity as to any other aspect of the patron's claim or the arbitration process. Thus, relevant to the present case, the Tribe does not appear to have granted to the state court the prerogative to order it to arbitrate claims.

This conclusion, however, must be considered in light of the United States Supreme Court's decision in *C & L Enterprises, Inc. v. Potawatomi Indian Tribe of Oklahoma* (2001) 532 U.S. 411 [149 L.Ed.2d 623, 121 S.Ct. 1589] (*C & L*). In that case the tribe proposed and entered into a standard form contract with C & L Enterprises, Inc., for the roofing of a building owned by the tribe in Oklahoma. For purposes of the case, the contract contained two key provisions. First, the contract provided that all disputes between the parties arising under the contract were to be decided in arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Any award rendered was to be final and the judgment could be entered upon in accordance with applicable law in any court having jurisdiction over it. The second key provision of the contract was a choice of law clause stating that the contract was to be governed by the law of the place where the construction project was located. Oklahoma had adopted a Uniform Arbitration Act which stated that the making of any agreement providing for arbitration in the state conferred jurisdiction on the state court to enforce the

---

[1] There is no indication in the record the Tribe has such forum or dispute resolution system.

agreement and to enter judgment on an award made in arbitration. (*C & L, supra*, 532 U.S. at pp. 414–416.)

*C & L* concluded the tribe had breached the contract and submitted a demand for arbitration. The tribe asserted sovereign immunity and declined to participate in the arbitration proceeding. The arbitrator rendered an award in favor of C & L Enterprises, Inc. C & L Enterprises, Inc., filed suit in state court to enforce the award. The tribe appeared specially and moved to dismiss the action on the ground it was immune from suit. The state trial court denied the tribe's motion and entered a judgment confirming the award. The state appellate court reversed, holding the tribe's agreement to arbitration implied but did not sufficiently express a waiver of its sovereign immunity from suit. (*C & L, supra,* 532 U.S. at pp. 416–417.)

The Supreme Court noted the decision of the Oklahoma Court of Appeal conflicted with the decisions of other states and federal courts, holding that arbitration clauses like the one in *C & L* are an express contractual waiver of a tribe's immunity from suit. (*C & L, supra,* 532 U.S. at p. 417.)

The court in *C & L* began its analysis by noting a tribe's waiver of immunity must be "clear." The court found the arbitration provisions of the construction contract, tendered by the tribe, made sufficiently clear the tribe's waiver of immunity. It found that the arbitration language in the contract was unambiguous. It concluded that by agreeing to submit all disputes to arbitration, to enforcement in any court of competent jurisdiction and in accepting Oklahoma as the law governing the contract, the tribe had waived its immunity from suit. (*C & L, supra,* 532 U.S. at pp. 418–420.)[2]

I do not believe the reasoning of *C & L* is applicable to the present case. Here we are dealing not with a contract but with a gaming regulation promulgated by a sovereign entity. The Compact with the State of California specifically reserves to the Tribe the right to set the terms and conditions, if any, under which it waives immunity from suit. Unlike the contractual arbitration clauses in *C & L*, which gave both parties the right to resolve disputes by arbitration, regulation creates a claims process. If the process is completed without settlement, the patron may request the Executive Committee submit the matter to binding arbitration. The decision to submit or not submit the matter is solely within the prerogative of the committee. Until the committee agrees to submit the matter to arbitration, none of the attributes of

[2] *C & L, supra*, 532 U.S. 411, is discussed in several California cases. (See *Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1184–1185 [127 Cal.Rptr.2d 706]; *Smith v. Hopland Band of Pomo Indians* (2002) 95 Cal.App.4th 1, 5–7 [115 Cal.Rptr.2d 455].)

arbitration that were of importance to the Supreme Court in finding a waiver of immunity apply.

Additionally, I would note any clarity that may exist in the waiver of immunity found in the arbitration provisions in *C & L* is absent here given regulation's statement that the Tribe waives immunity from suit only with regard to the enforcement of awards made in arbitration.

Because the regulation reserves to the Tribe the decision as to whether a matter is submitted to arbitration, the trial court, therefore, was without jurisdiction to compel arbitration. Nor can Celeste Bluehawk resort to an argument that the regulation or the administration of it does not satisfy the Tribe's contractual obligation under section 10.2(d) of the Compact and as a result the Tribe's sovereign immunity is somehow waived. Nothing in the Compact states the failure of the Tribe to abide by its provisions results in a waiver of sovereign immunity.

Bluehawk may well complain that on the facts of this case such a result is fundamentally unfair and denies her important procedural and substantive rights under California law. In a case with facts similar to those before us, the court in *Redding Rancheria v. Superior Court* (2001) 88 Cal.App.4th 384, 389–390 [105 Cal.Rptr.2d 773], made the following observations: " 'There are reasons to doubt the wisdom of perpetuating the doctrine [of immunity]. . . . Tribal enterprises now include ski resorts, gambling, and sales of cigarettes to non-Indians. [Citations.] In this economic context, immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, *as in the case of tort victims.*' [Citations.] ['[T]he rule is unjust. This is especially so with respect to tort victims who have no opportunity to negotiate for a waiver of sovereign immunity; yet nothing in the Court's reasoning limits the rule to lawsuits arising out of voluntary contractual relationships']; [citations.] Any change or limitation of the doctrine . . . must come from Congress. [Citation.]" (See also *Chayoon v. Chao* (2d Cir. 2004) 355 F.3d 141, 142.)

It is worth noting the procedures in this case were at times inconsistent and confusing. In light of this, it bears emphasis that compacts supporting the concept of sovereign immunity rest upon a foundation of good faith between the tribes and the state. It is therefore critical that the parties to a tort claim, as well as their agents and insurance providers, proceed with high regard for the spirit of the compact, for while the realities of Indian gaming law may be harsh to injured parties, the failure to act in good faith is still harsher on the

compact process itself. Indeed, in section 11.2.1(c) the Compact here notes the importance of cooperative efforts and the potential result where such efforts collapse: either party may bring a declaratory relief action in federal court. Should a material breach be found, the complaining party in the declaratory relief action may unilaterally terminate the compact.

For the reasons stated I would grant the petition.

A petition for a rehearing was denied March 20, 2006, and the opinion was modified to read as printed above. Benke, J., was of the opinion that the petition should be granted. Petitioner's petition for review by the Supreme Court was denied June 21, 2006, S142564.