[No. D049558. Fourth Dist., Div. One. July 18, 2007.]

NELLIE LAWRENCE et al., Plaintiffs and Appellants, v.
BARONA VALLEY RANCH RESORT AND CASINO et al., Defendants
and Respondents.

## COUNSEL

The Kane Law Firm, Bonnie E. Kane; Law Offices of Todd Tappe and Todd Tappe for Plaintiffs and Appellants.

Law Offices of Art Bunce, Art Bunce and Kathryn Clenney for Defendants and Respondents.

## OPINION

**McINTYRE, J.**—Nellie and Keith Lawrence filed this action against Barona Valley Ranch Resort and Casino, an establishment operated by the Barona Band of Mission Indians (Barona), arising out of injuries Nellie sustained while she was a patron there. They appeal a judgment dismissing their action after the trial court granted Barona's motion to quash service of the summons and complaint, contending that, in accordance with this court's decision in *Campo Band of Mission Indians v. Superior Court* (2006) 137 Cal.App.4th 175 [39 Cal.Rptr.3d 875] (*Campo*), the trial court erred in finding that Barona's sovereign tribal immunity precluded it from being sued in state court. We reject the Lawrences' argument and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the Indian Gaming Regulatory Act of 1988 (18 U.S.C. § 1166 et seq.; 25 U.S.C. § 2701 et seq. (the Act)), Barona entered into a compact with the State of California (the State) in October 1999 to allow it to operate gambling facilities within the State (the Compact). In the Compact, Barona agreed to comply with certain standards relating to public health and safety at its facilities, to maintain certain public liability insurance for personal injury claims by patrons injured at the facilities and to adopt a tort liability ordinance setting forth the terms and conditions under which it would waive its sovereign immunity relating to such claims and the procedures for processing those claims. As particularly relevant here, section 10.2(d) of the Compact provides: "[Barona shall carry] no less than five million dollars

($5,000,000) in public liability insurance for patron claims and . . . provide reasonable assurance that those claims will be promptly and fairly adjudicated, and that legitimate claims will be paid; provided that nothing herein requires [Barona] to agree to liability for punitive damages or attorneys' fees. . . . [Barona] shall adopt and make available to patrons a tort liability ordinance setting forth the terms and conditions, if any, under which [it] waives immunity to suit for money damages resulting from intentional or negligent injuries to person or property at the Gaming Facility or in connection with the Tribe's Gaming Operation, including procedures for processing any claims for such money damages; provided that nothing in this Section shall require [Barona] to waive its immunity to suit except to the extent of the policy limits set out above."

In accordance with the Compact, Barona adopted a tort claims ordinance, which provides in relevant part:

"IV. Limited Waiver of Sovereign Immunity

"A. The sovereign immunity of [Barona] shall continue except to the extent that it is expressly waived by this Ordinance. Officers of [Barona], including members of the Tribal Council, remain immune from suit for actions arising within the course and scope of their authority and duties.

"B. [Barona] and its enterprises, agencies and officers may be sued solely in Barona Tribal Court. [Barona] does not waive immunity from suit in any state or federal court.

"C. The sovereign immunity of [Barona] and its enterprises is waived in the following instances: [¶] Injuries proximately caused by the negligent acts or omissions of [Barona], its enterprises, agencies and officers; [¶] Injuries proximately caused by the condition of any property of [Barona] at its enterprises and agencies, provided that the Claimant established that the property was in a dangerous condition and [Barona] and/or its personnel had actual knowledge or constructive notice of the dangerous condition and sufficient time prior to the injury to take measures to remedy or protect against the dangerous condition; [¶] Negligent acts or omissions of Tribal employees or agents within the course and scope of their employment or agency.

"V. Exclusive Remedy "This Ordinance provides the exclusive procedure, forum and remedy for claims against [Barona], its enterprises, agencies, employees and officers. [¶] . . . [¶]

"XII. Appeal

"If a claim is rejected by the insurer or the parties have reached an impasse as to the dollar value of a claim, appeal may be taken to the Barona Tribal Court. . . . Until such time as a formal court is established, the Barona Tribal Council shall serve as the Tribal Court."

In March 2004, Nellie was injured at Barona's casino when someone ran into her and knocked her down. Believing that the negligent person was a casino employee, the Lawrences, through an attorney, made a claim for damages of $1 million against Tribal First, Barona's insurance carrier. Tribal First denied the Lawrences' claim in September 2004 and thereafter their attorney withdrew; the Lawrences represented themselves in the appeal of the denial of their claim to the Barona Tribal Council, which was acting as the tribal court, in April 2005. The tribal court found that evidence established the negligent party to have been a casino patron rather than an employee and denied the appeal.

The Lawrences retained new counsel and in March 2006 they sued Barona in superior court, asserting causes of action for premises liability, negligence and negligent infliction of emotional distress. Barona moved to quash service of the summons, arguing that it had sovereign tribal immunity from such a suit and accordingly that the state court lacked subject matter jurisdiction over the matter. The Lawrences opposed the motion on the ground that Barona waived its tribal immunity when it entered into the Compact and that the procedures and processes established by Barona's tort claims ordinance were "grossly unfair" to claimants. The trial court agreed with Barona's contention and dismissed the complaint. The Lawrences appeal.

## DISCUSSION

1. *General Principles of Tribal Sovereign Immunity*

■ Under federal law, an Indian tribe is a sovereign authority and, as such, has tribal sovereign immunity, not only from liability, but also from suit. (*Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 57–58 [56 L.Ed.2d 106, 98 S.Ct. 1670]; *Tamiami Partners v. Miccosukee Tribe of Indians* (11th Cir. 1995) 63 F.3d 1030, 1050 [recognizing that allowing a suit against a tribe to go to trial would render tribal sovereign immunity "meaningless"].) Pursuant to tribal sovereign immunity principles, an Indian tribe is subject to suit only where Congress has so authorized or where the Tribe has waived its immunity by consenting to suit. (*Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.* (1998) 523 U.S. 751, 754 [140 L.Ed.2d 981, 118 S.Ct. 1700].) Absent such authorization or consent, the courts do not have subject matter jurisdiction over suits against a tribe. (*Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1182 [127 Cal.Rptr.2d 706].)

■ A tribe's consent to suit cannot be implied and, while no talismanic words are required, it must nonetheless be "clear." (*C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.* (2001) 532 U.S. 411, 414–420 [149 L.Ed.2d 623, 121 S.Ct. 1589]; *Big Valley Band of Pomo Indians v. Superior Court* (2005) 133 Cal.App.4th 1185, 1193 [35 Cal.Rptr.3d 357].) Where a tribe gives such consent, any conditional limitation imposed thereon must be strictly construed and applied. (*Missouri River Services v. Omaha Tribe of Nebraska* (8th Cir. 2001) 267 F.3d 848, 852.)

### 2. *Standard of Review*

■ "On a [tribe's] motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists." (*Garcia v. Akwesasne Housing Authority* (2d Cir. 2001) 268 F.3d 76, 84; see *Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407, 1418 [88 Cal.Rptr.2d 828].) In the absence of conflicting extrinsic evidence relevant to the issue, the question of whether a court has subject matter jurisdiction over an action against an Indian tribe is a question of law subject to our de novo review. (*Warburton/Buttner v. Superior Court, supra*, 103 Cal.App.4th at p. 1180.)

### 3. *Subject Matter Jurisdiction over the Lawrences' Claims*

■ As this court held in *Campo*, a tribe that enters into the Compact waives its sovereign tribal immunity as to suits by patrons for certain injuries suffered at its gaming facilities, to the extent of the insurance coverage the Compact requires it to obtain for such claims. (*Campo, supra*, 137 Cal.App.4th at p. 184.) Such a waiver, however, does not also constitute a tribe's consent to having such suits brought against it in state court. As recognized in *Campo*, "[a] waiver of immunity ' "is altogether voluntary" ' on the part of the tribe and thus the tribe ' "may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted . . . ." ' " (*Id.* at p. 185, quoting *Amer. Indian Agr. Credit v. Stand. Rock Sioux Tribe* (8th Cir. 1985) 780 F.2d 1374, 1378, quoting *Beers v. State of Arkansas* (1857) 61 U.S. 527, 529 [15 L.Ed. 991].) Thus, in *Campo*, we concluded that although the tribe waived its sovereign immunity relating to certain patron claims, its waiver did not constitute a consent to suit in state court on those claims; rather, those claims had to be resolved in the forum specified in the tribe's tort claims ordinance (i.e., arbitration). (*Campo, supra*, 137 Cal.App.4th at p. 185, citing *Rosebud Sioux v. Val-U Const. Co.* (8th Cir. 1995) 50 F.3d 560, 562.)

■ Here, by entering into the Compact, Barona waived its sovereign immunity to certain negligence claims against it, just as did the tribe in *Campo*. (Compact, § 10.2(d); see *Campo, supra,* 137 Cal.App.4th at p. 184.) However, also as in *Campo*, Barona's waiver did not constitute a consent to suit in state court on negligence claims against it, but instead specified that the Barona Tribal Court was the exclusive forum for the resolution of such claims. (Tort claims ord., §§ IV(B), V.) Barona did not waive its sovereign tribal immunity, either in the Compact or in its tort claims ordinance, or otherwise consent to a suit against it in state court on the Lawrences' claims.

The California Supreme Court's recent decision in *Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239 [52 Cal.Rptr.3d 659, 148 P.3d 1126] (*Agua Caliente*) does not support a contrary conclusion. In that case, the California Fair Political Practices Commission sued an Indian tribe, alleging that the tribe had failed to comply with the reporting requirements of the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.) relating to more than $8 million in campaign contributions the tribe made in 1998, 2001 and 2002. (40 Cal.4th at p. 244.) The tribe moved to quash service of the summons on it, arguing that tribal sovereign immunity rendered it immune from suit and prevented the state courts from asserting personal jurisdiction over it. (*Id.* at pp. 244–245.) The high court affirmed the denial of the motion to quash, concluding that although Indian tribes are generally immune from being sued in state courts absent a waiver or consent, the Tenth Amendment and the guarantee clause of the United States Constitution permitted an involuntary action against a tribe to enforce state laws governing the state's electoral process. (*Id.* at pp. 247, 256–261.)

■ Unlike *Agua Caliente*, this action does not involve a state's attempts to enforce its laws governing political processes. Further, as recognized in *Agua Caliente*, the Indian commerce clause of the federal constitution (U.S. Const., art. I, § 8, cl. 3) gives Congress the exclusive power to control Indian commerce, which in turn constrains a state's authority to interfere with " 'commercial activity on an Indian reservation,' " but does not likewise constrain the state's right to require a tribe to comply with its political practice laws. (*Agua Caliente, supra,* 40 Cal.4th at p. 249, quoting *Ramah Navajo School Bd. v. Bureau of Revenue* (1982) 458 U.S. 832, 837 [73 L.Ed.2d 1174, 102 S.Ct. 3394].) The Lawrences do not contend that a tribe's operation of a casino on tribal property involves something other than commercial activity and this distinction alone is sufficient to render the analysis of *Agua Caliente* inapposite here.

The Lawrences' reliance on *San Manuel Indian Bingo and Casino v. N.L.R.B.* (D.C. Cir. 2007) 374 U.S. App.D.C. 435 [475 F.3d 1306] (*San Manuel*) is likewise misplaced. The issue presented in that case was whether an Indian tribe was subject to the provisions of the National Labor Relations Act (29 U.S.C. § 151 et seq.) relating to union organizing efforts at a casino it operated on its reservation. (*San Manuel, supra*, at. pp. 1307–1308.) The United States Court of Appeals for the District of Columbia Circuit held that principles of tribal sovereign immunity did not preclude the enforcement of the Act's provisions relating to employment activities at the casino. (*San Manuel, supra*, 475 F.3d at pp. 1311–1315.) In doing so, the circuit court recognized Congress's " 'plenary authority to limit, modify or eliminate the powers of local self-government [that] the tribes otherwise possess.' " (*Id.* at p. 1312, quoting *Santa Clara Pueblo v. Martinez, supra*, 436 U.S. at pp. 55–56.) As noted above, the states do not possess any similar power to limit, modify or eliminate a tribe's tribal sovereignty except to the extent authorized by Congress or consented to by the tribe and thus the analysis of *San Manuel* has no application here.

Finally, the Lawrences contend that the process established by Barona's tort claims ordinance for handling claims against Barona does not provide for the fair resolution of such claims and that the failure to provide a fair forum itself constitutes a waiver of tribal immunity. There are several problems with this argument. First, none of the causes of action set forth in the Lawrences' complaint challenges the propriety of Barona's claims-handling procedures, nor do they contain any allegations relating thereto. Second, the Lawrences do not identify any provision of the Compact that authorizes an action by a private litigant in state court to raise such a challenge; in fact, the Compact expressly provides that claims for violations thereof are to be brought in federal court (unless the federal court lacks the requisite jurisdiction). Lastly, as indicated above, a tribe's consent to suit must be clear and any conditions imposed thereon must be strictly construed and applied and the language of the Compact is unequivocal that, while Barona agreed to waive its tribal sovereign immunity to certain claims against it, it was permitted to choose the forum for the resolution of those claims and the terms governing the process for such resolution. (Compact, § 10.2(d); see also *Campo, supra*, 137 Cal.App.4th at pp. 184–185.) That the Lawrences find Barona's choices unacceptable does not render Barona subject to suit in state court.

For these reasons, we conclude that the trial court properly granted Barona's motion to quash service of the summons.

## DISPOSITION

The judgment is affirmed. Barona is awarded its costs on appeal.

Benke, Acting P. J., and Irion, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 10, 2007, S155826.