**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARMEN PERALTA,
            *Plaintiff-Appellant,*

v.

HISPANIC BUSINESS, INC.,
            *Defendant-Appellee.*

No. 03-57000

D.C. No.
CV-03-00540-CJC

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
June 8, 2005—Pasadena, California

Filed August 18, 2005

Before: Stephen S. Trott and William A. Fletcher,
Circuit Judges, and Jane A. Restani,* Judge.

Opinion by Judge Restani

*The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

## COUNSEL

Ester R. Sorkin, Ball & Yorke, Ventura, California, for the plaintiff-appellant.

Stephen E. Ronk, Christopher E. Hawk, Gordon & Rees, LLP, Los Angeles, California, for the defendant-appellee.

## OPINION

RESTANI, Judge:

Carmen Peralta appeals the district court's grant of summary judgment in favor of her former employer, Hispanic

Business, Inc. ("HBI"). Peralta alleges that HBI breached its fiduciary duty as an ERISA plan administrator by failing to inform her in a timely manner that her ERISA benefit plan for long-term disability insurance had been cancelled. The district court found that any state law claims were preempted by ERISA and that the remedy sought was not available under ERISA. On appeal, Peralta asserts that subject matter jurisdiction is lacking or, in the alternative, that an ERISA violation occurred and a remedy exists. We conclude that we have jurisdiction and affirm the grant of summary judgment in favor of defendant.

## FACTS

In October 1998, Carmen Peralta began work as a special events manager for HBI, a publisher of business magazines. As part of an effort to enhance its benefits package, HBI introduced a new long-term disability insurance policy ("LTD policy"), effective January 1, 1999, at no cost to its employees, which automatically covered "all regular employees who work[ed] 30 or more hours per week." *Letter from HBI* (Dec. 28, 1998), ER at 101. The LTD policy was an employee benefits plan, as defined by ERISA, and Peralta was a beneficiary of the plan. In July 2000, Maureen Girouard, the then-Human Resources ("HR") Manager at HBI, wrote to the LTD policy carrier to cancel the policy.

On October 10, 2000, Peralta, while still employed at HBI, was involved in an automobile accident and suffered serious injuries. Believing that she was covered under HBI's LTD policy, Peralta attempted to make a claim for long-term disability benefits. But as the policy had already been cancelled, no benefits were paid.

At the time of Peralta's accident, June Wozny was HBI's HR manager. Wozny was in charge of the administration of HBI's employee benefits plan, and one of her projects was to take "a good hard look at the current benefit plan" and try to

improve the benefits package, in an attempt to reduce HBI's high employee turnover. *Wozny Dep.* (July 29, 2003), ER at 48. During Wozny's investigation into the existing HBI benefits, she discovered, based on "a file, a printed material . . . E-mail or [something] in someone's handwriting, that [someone] had cancelled this long-term disability [policy]."[1] *Id.* at 50. As a result, Wozny sent out an email, on October 18, 2000, informing all HBI employees that the LTD policy had been "cancelled inadvertently" in July 2000 "[b]ecause of some communication errors."[2] *Id.* During her deposition, Wozny admitted that prior to these discoveries, based on a summary of HBI's employee benefit plans, she was under the assumption that HBI had an LTD in place. Peralta, who had been in the hospital since October 10, 2000, was initially not aware of Wozny's email. By the time she left the hospital at the end of October 2000, however, Peralta had learned of the cancellation of the LTD policy, which she later verified with the HR manager.

On October 4, 2002, Peralta filed suit in federal district court, alleging breach of fiduciary duty by HBI under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*[3] Peralta claimed that she had relied on HBI's LTD policy and, believing that she was already covered, did not purchase outside insurance. She further claimed that HBI had a fiduciary duty to "provide complete and accurate information about the status of the

---

[1]Despite the seemingly deliberate cancellation of the LTD policy, there are questions regarding who, specifically, authorized the cancellation, and whether it was for reasons of cost, lack of use, failure to make a payment, or mistake.

[2]The email also stated that HBI was obtaining bids from new carriers for the open enrollment period, effective December 1, 2000, and "[a]t that time this policy will be reinstated." *Wozny Email* (Oct. 18, 2000), ER at 208. Counsel confirmed at oral argument, however, that the policy was not reinstated.

[3]Peralta settled her claims in connection with the underlying accident separately.

employee benefits plan," which included "providing notice of the discontinuation or suspension of coverage." *Complaint* (Oct. 4, 2002), ER at 2. According to Peralta, HBI violated its fiduciary duty to give adequate notice by intentionally concealing the fact that it had cancelled the LTD policy. Peralta sought either an order reinstating her LTD benefits, or, in the alternative, other orders that would provide substantive relief equivalent to the reinstatement of the LTD benefits.

On August 21, 2003, HBI moved for summary judgment on numerous grounds, including that (1) HBI provided adequate notice of the LTD policy cancellation, pursuant to ERISA's notice requirement, *see* 29 U.S.C. §§ 1022(a)-(b), 1024(b)(1) (2000); (2) Peralta's request for a reinstatement of LTD benefits or substantive relief equivalent to the reinstatement of benefits would be a compensatory monetary recovery not permitted under *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 210-11 (2002), for a procedural ERISA breach; and (3) even if monetary recovery for a procedural ERISA breach were possible, it would not be available to Peralta because HBI committed no egregious action.[4]

On October 16, 2003, the district court granted summary judgment for HBI, concluding that no remedy was available. The court stated that "[p]ursuant to *Great-West* . . . and its progeny, Plaintiff may not use the equitable enforcement mechanisms of ERISA to secure compensatory relief for HBI's alleged breach of fiduciary duty." *Order Granting Def.'s Mot. For Summ. J.* (Oct. 16, 2003), ER at 316. The court reasoned that because the LTD policy had been cancelled and was no longer in effect, Peralta's requested relief "must be compensatory in nature, and thus, outside the scope of the equitable enforcement mechanisms of ERISA 29 U.S.C. § 1132(a)(3)." *Id.* On October 29, 2003, the court

---

[4]Peralta's claim for statutory damages of $100 per day for failure to provide a copy of the LTD policy was denied by the district court and not appealed.

ordered that the "Plaintiff take nothing and that the action be dismissed on the merits." *Judgment* (Oct. 29, 2003), ER at 319. Peralta now appeals.

## DISCUSSION

### I.   Subject Matter Jurisdiction

The parties dispute whether subject matter jurisdiction exists. Although this issue was first presented to the district court at the hearing on the summary judgment motion, and not addressed in the district court's order, we must still determine whether federal jurisdiction exists. *See Freeman v. Jacques Orthopaedic & Joint Implant Surgery Med. Group, Inc.*, 721 F.2d 654, 655 (9th Cir. 1983) (explaining that "it is this court's duty to see to it that the [d]istrict [c]ourt's jurisdiction, defined and limited by statute, is not exceeded"). We review the existence of subject matter jurisdiction *de novo. Millers Nat'l Ins. Co. v. Axel's Express, Inc.*, 851 F.2d 267, 269 (9th Cir. 1988).

**[1]** In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. There is no diversity jurisdiction here because Peralta and HBI are both California citizens. The sole federal question in Peralta's complaint arises from her disability claims under ERISA, 29 U.S.C. § 1001, *et seq.*, which preempts state law claims that "relate to" an employee benefit plan. *See* 29 U.S.C. § 1144(a).

**[2]** The complaint filed in the district court makes quite clear that Peralta seeks remedies based on a breach of fiduciary duty by an administrator of an ERISA plan. There is no doubt, and the parties do not dispute, that the LTD policy at issue was an ERISA welfare benefit plan.[5] There is also no doubt or dispute that HBI was an ERISA fiduciary.

---

[5]ERISA governs two types of employee benefit plans: (1) "pension" benefit plans and (2) "welfare" benefit plans. 29 U.S.C. § 1002(1)-(2).

In previous cases, while we have found no ERISA preemption with respect to certain claims that are only loosely related to ERISA, in none of those cases did an ERISA plan exist under which the plaintiff sought benefits based on a breach of fiduciary duty by the plan's administrator, as is the case here. For example, we have at times found insufficient relation to the benefit plan for preemption to attach. *See, e.g.*, *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937-39 (9th Cir. 2003) (no ERISA preemption because there was no ERISA plan); *Curtis v. Nevada Bonding Corp.*, 53 F.3d 1023, 1027-29 (9th Cir. 1995) (no ERISA preemption because plaintiff never became eligible to receive benefits under the plan); *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 933 (9th Cir. 1994) (no ERISA jurisdiction because, at the time of filing suit, the former employee, was not a participant in employer's ERISA health care plan); *Delaye v. Agripac, Inc.*, 39 F.3d 235, 238 (9th Cir. 1994) (no ERISA jurisdiction because employment contract is not a plan governed by ERISA); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1505-06 (9th Cir. 1985) (no ERISA preemption of employees' prospective benefits claim based on the employer's failure to negotiate coverage with the successive employer, which prevented the existence of a plan).

**[3]** Recently, in *Providence Health Plan v. McDowell*, 385 F.3d 1168 (9th Cir. 2004), *cert. denied*, 125 S. Ct. 1726, *and cert. denied*, 125 S. Ct. 1735 (2005), we concluded that an ERISA provider's breach of contract claim against a participant for failure to reimburse it from a third-party settlement was not preempted by ERISA. 385 F.3d at 1171-73. The reimbursement claim in that case did not "relate to" the plan because adjudication of the claim required no interpretation of the plan, no distribution of benefits, and no dispute regarding any benefits previously paid. *Id.* at 1172 (explaining that when evaluating whether a claim "relates to" a plan governed by ERISA, "the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival"). We concluded that

such reimbursement claims are merely state law claims for contract damages, requiring no construction of plan terms and for which no ERISA remedies exist. *Id. McDowell*, however, has no factual similarity to the instant case, where interpretation of ERISA law lies at the heart of the dispute. Because, as discussed *infra*, we conclude that ERISA imposes a fiduciary duty of timely notification of plan cancellation, and that breach of such a duty may give rise to equitable remedies, we also conclude that ERISA preemption exists and that federal question subject matter jurisdiction is present.

## II.   Duty of Timely Notification

It is indisputable that an employer has a right to eliminate an ERISA-governed benefit plan. *See Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1432-33 (9th Cir. 1986) (holding that termination of ERISA plan was not a breach of fiduciary duty) (citation omitted). That is not the issue here. The issue is, rather, whether an administrator has a fiduciary duty to notify participants in a timely fashion of the total termination of their coverage, and whether that duty is separate from the reporting and disclosure duty under 29 U.S.C. § 1024(b)(1) to notify participants of material changes and modifications.[6]

[4] In this case, because HBI's notification of the LTD policy cancellation, per Wozny's October email, occurred approximately three months after Girouard's July cancellation letter, the § 1024(b)(1) requirement, that "a summary descrip-

---

[6]"[W]elfare plans are expressly exempted from [ERISA's] detailed minimum participation, vesting and benefit-accrual requirements and are not subject to ERISA's minimum-funding requirements." *Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988). Notwithstanding these exemptions, welfare benefit plans are governed by ERISA's reporting and disclosure requirements, *see* 29 U.S.C. §§ 1021-1031 (2000), and fiduciary responsibility standards, *see* 29 U.S.C. §§ 1101-1114 (2000). *See also Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir. 1984), abrogation on other grounds recognized by *Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 n.4 (9th Cir. 1990).

tion of such modification or change shall be furnished not later than 210 days [seven months] after the end of the plan year in which the change is adopted," would be satisfied. Whether there is a more basic duty to provide timely notice of plan cancellation, however, is an issue that few courts have addressed, and for us is an issue of first impression. For the reasons that follow, we conclude that, although the statute does not expressly require timely notice of plan termination, such a requirement is implicit in the purpose and structure of ERISA.

## A.   The Fiduciary Purpose of ERISA

[5] "ERISA seeks 'to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan.' " *Blau*, 748 F.2d at 1356 (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982)). "[T]he evils against which ERISA was enacted to guard [are] insecurity, lack of knowledge, and inability to police plan administration . . . ." *Id.* ERISA guards against these evils and protects employee benefit plans by setting forth certain fiduciary duties applicable to the management of both employee welfare and benefit plans.[7]

---

[7]When enacting ERISA, Congress invoked and incorporated the common law of trusts, which had governed most benefit plans before ERISA, to broadly define the general scope of an ERISA administrator's fiduciary duty. *See Cent. States, Se. & Sw. Area Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985) ("[R]ather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility."); *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) ("we believe that the law of trusts often will inform, but will not necessarily determine the outcome of, an effort to interpret ERISA's fiduciary duties. In some instances, trust law will offer *only a starting point*, after which courts must go on to ask whether, or to what extent, the language of the statute, *its structure*, or *its purposes* require departing from common-law trust requirements.") (emphases added); Restatement (Second) of Trusts § 170 (1992) (imposing a duty of loyalty on trustees to "administer the trust solely in the interest of the beneficiaries" and imposing "a duty to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the transaction").

*See generally* 29 U.S.C. §§ 1101-1104. The statute places a core obligation on an ERISA fiduciary to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries." *Id.* § 1104(a)(1);[8] *see also Varity*, 516 U.S. at 506; *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1048 (9th Cir. 2000) (en banc).

[6] Citing § 1104(a)(1), the Eleventh Circuit has concluded that "[p]roviding notice of the discontinuation or suspension of coverage is a fiduciary responsibility" and that "employees are entitled to prompt notice of the suspension of their plan coverage." *Willett v. Blue Cross & Blue Shield of Alabama*, 953 F.2d 1335, 1340 (11th Cir. 1992); *see id.* at 1341-42 (holding that delegation of duty to notify individuals of suspension of coverage does not relieve fiduciary of all liability for breach of that duty); *accord Presley v. Blue Cross-Blue Shield of Alabama*, 744 F. Supp. 1051, 1058 (N.D. Ala. 1990) (recognizing that insurer could delegate fiduciary duty of notifying plan participants of termination of coverage, but that its liability for breach could still exist); *see also Rucker v. Pacific FM, Inc.*, 806 F. Supp. 1453, 1459 (N.D. Cal. 1992) (recognizing duty of *prompt* notification of LTD policy cancellation).[9]

---

[8]Included directly in the statute are congressional findings and a declaration of policy stressing the need to protect employee interests. *See id.* § 1001(a) (declaring, among other things, that (1) "the continued well-being and security of millions of employees and their dependants are directly affected by these plans;" (2) due to the "lack of employee information and adequate safeguards concerning their operation [employee welfare and benefit plans], it is desirable in the interests of employees and their beneficiaries . . . that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans;" and (3) it was desirable "that minimum standards be provided assuring the equitable character of such plans").

[9]In dicta, the Third Circuit suggested that the only fiduciary duty regarding termination notification is found in 29 U.S.C. § 1024(b)(1). *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1168, n.15 (3rd Cir. 1990). The court also opined that Congress may have sought to minimize disincentives to creating ERISA benefit plans by restricting liability for reporting and disclosure violations. *Id.* at 1170. There is little burden, however, in advising employees when a plan is terminated, and routine reporting and disclosure requirements would seem to be of a different nature from complete termination, as is discussed in the following section.

**[7]** We agree with the Eleventh Circuit that the broad fiduciary responsibilities imposed by ERISA require a plan administrator to provide timely notification to employees of termination of their benefits. To conclude otherwise would conflict with ERISA's purpose to safeguard the well-being of employees and apprise them of their rights under an ERISA plan.

B.   The Structure of ERISA

**[8]** In addition to fiduciary duties, ERISA imposes reporting and disclosure obligations on a plan administrator. The reporting and disclosure provisions, *see* 29 U.S.C. §§ 1021-1031, are set forth separately from the fiduciary duty provisions, *see* 29 U.S.C. §§ 1101-1114. This separation suggests that an administrator's satisfaction of specific reporting requirements does not necessarily satisfy its fiduciary responsibilities. Indeed, to say that compliance with Part One of ERISA would also satisfy obligations under Part Four would render the Act's fiduciary protections a nullity, or at least surplusage. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quotations and citations omitted) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

**[9]** Therefore, in order to give meaning and effect to ERISA's fiduciary purpose, more must be required of an administrator than mere compliance with ERISA's express reporting and disclosure provisions. In other words, "[i]f the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties, it would serve no purpose." *Varity*, 516 U.S. at 504.

**[10]** Moreover, although HBI's notice—within approximately three months of the LTD policy cancellation—would satisfy the reporting and disclosure requirements set forth in § 1024(b)(1), a termination is not the equivalent of a change

or modification.[10] *See* Black's Law Dictionary 1155, 1641 (4th ed. 1957) (defining "modification" as "[a] change; an alteration which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact; and "terminate" as "[t]o put an end to; to make to cease; to end"); *see also MCI Tele-comms. Corp. v. AT&T Co.*, 512 U.S. 218, 225, 228 (1994) (defining "modify" as having a "connotation of increment or limitation," which is evidenced by the fact that nearly every dictionary says " 'to modify' means to change moderately or in minor fashion," and that " 'modify' does not contemplate fundamental changes").

**[11]** Unlike a change or modification, the termination of a plan leaves an employee without any coverage whatsoever. *See Rucker*, 806 F. Supp. at 1459 (stating that "a termination of benefits affects a beneficiary's rights to a much greater degree than compared to a mere modification"). If the statute's 210-day notification period were to apply, employees, unknowingly, would be at risk of having no coverage for seven months. A seven-month notification period hardly can be considered the meaningful disclosure mandated by ERISA or the "prompt" notification set forth in *Willet*, 953 F.2d at 1340.[11]

As we stated in *Blau*,

[t]he administrator of an employee welfare benefit plan . . . has no discretion to secrete the plan, to flout the reporting, disclosure and fiduciary obligations imposed by ERISA, or to deny benefits in contraven- tion of the plan's plain terms. 29 U.S.C. §§ 1101-

---

[10]While the LTD plan may not be the only welfare benefit plan provided by HBI, it was a separate plan.

[11]There is no principled reason to distinguish the suspension of an indi- vidual's coverage from suspension or termination of coverage for the whole workforce. The same risk is simply multiplied.

1114 (fiduciary responsibilities with respect to plan); 29 U.S.C. §§ 1021-1031 (reporting and disclosure provisions); 29 U.S.C. § 1104(a)(1)(D) (plan must be administered "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]").

748 F.2d at 1353.

[12] HBI's notification, three months after the plan's cancellation, does not constitute timely notification. Timely notification may in some circumstances mean prompt notification after a change has been effectuated. In other circumstances, timely notification may require prior notice. For example, timely notification of cancellation may require prior notice so that employees may purchase replacement coverage or consider alternative employment.[12] *See Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78 (3rd Cir. 1991) (noting that ERISA's reporting and disclosure requirements ensure that participants know where they stand with respect to the plan, and permit employees "to bargain further or seek other employment if they are dissatisfied with their benefits"); *Hozier*, 908 F.2d at 1168 ("An employee who never receives information about gaps in the coverage of his benefits package . . . is unable to make fully informed decisions about whether to purchase alternative insurance, or even to seek alternative employment.").

---

[12]For example, the statute sets forth a 60-day deadline for notification of material reductions in group health plans. *See* 29 U.S.C. § 1024(b)(1) (amended by Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, § 101(c), to state that for "a material reduction in covered services or benefits provided under a group health plan . . . a summary description of such modification or change shall be furnished . . . not later than 60 days after the date of the adoption of the modification or change"). Obviously, some time is required to prepare a new summary when coverages are changed. No time is needed to say "plan cancelled."

**[13]** In short, while there is no express statutory requirement to notify participants in a timely fashion of plan cancellation, such a requirement is implicit in the structure and purpose of ERISA, and is more vital than the ordinary technical reporting and disclosure requirements. Employees are entitled to know if they have or do not have an ERISA plan. Failure to so advise employees violates the obligation of a fiduciary to discharge his duties in the interest of the participants with "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B).

III. Remedies

**[14]** The remaining issue is whether ERISA's "civil enforcement" provision provides a remedy. In this case, there is no possibility that Peralta can recover any benefits under the now-defunct plan pursuant to § 1132(a)(1)(B). Section 1132(a)(3), however, authorizes a participant "(A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3).

While Peralta ostensibly seeks reinstatement in the LTD plan, and payment of benefits thereunder, such a plan no longer exists. The plan was cancelled in July 2000 and never reinstated. *See supra* note 2. Thus, Peralta actually seeks a monetary recovery from HBI equal to the LTD benefits that would have been available had the plan not been cancelled. Only § 1132(a)(3) might permit such a recovery.

There are two problems, however, with regard to this potential remedy. The first concerns whether substantive remedies, beyond the limited remedies expressly set forth in the statute for technical procedural violations, are available for a procedural violation that wreaks substantial havoc;[13] the second is what remedy, if any, is available here.

---

[13]29 U.S.C. § 1132(a)(1)(A) and (c) provide modest daily penalties for failure to provide information when requested, failure to file annual

With regard to the first problem, as we stated in *Blau*, "[w]hile it is . . . clear that violations of ERISA's procedural requirements — reporting, disclosure and claims procedures — may amount to arbitrary and capricious conduct, the remedy to which this entitles the victimized employees has often been less than satisfactory." 748 F.2d at 1353.

**[15]** Various sister circuits have stated that substantive remedies are not available for technical reporting and disclosure procedural violations. In some of those cases, however, where plaintiffs sought substantive relief under 29 U.S.C. § 1132(a)(1)(B) (recovery of plan benefits), courts have awarded relief based on other procedural defects. *See Hozier*, 908 F.2d at 1163 (concluding that severance benefits provisions of earlier, unamended plan applied because the amendment was never reduced to writing); *Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388, 393 (7th Cir. 1983) (holding that failure to advise claimant of requirements to resolve the benefit plan claim necessitated remand to the fiduciary for a new claim determination); *cf. Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 583 (6th Cir. 2002) (denying equitable relief under § 1132(a)(3) because, although the plaintiff asserted that defendant's non-payments caused her to lose insurance benefits, the claim was based on consequential losses she experienced due to defendant's failure to perform under the plan).

**[16]** In *Blau*, however, we explicitly recognized that some procedural violations are so egregious that "they alter the substantive relationship between employer and employee that [ERISA's] disclosure, reporting and fiduciary duties [seek] to balance somewhat more equally." 748 F.2d at 1354. In those situations, procedural violations may "work a substantive

reports, and similar violations. These penalties range from up to $100 per day for violations against a beneficiary, as would be available here, and penalties of up to $1,000 per day for most violations against the Secretary of Labor. *Id.* § 1132(c).

harm" and be equivalent to the arbitrary and capricious denial of benefits that entitles the claimant to substantive remedies under ERISA, i.e., payment of benefits. *See id.* ("[A] court must consider continuing procedural violations in determining whether the decision to deny benefits in a particular case was arbitrary and capricious.").[14]

It is certainly a *continuing* procedural violation for an employer to fail to give employees notice of the complete termination of their LTD coverage for three months. Furthermore, in *Varity*, the Supreme Court concluded that reinstatement into the former employer's plan (which had continued to provide benefits to other employees) was an appropriate equitable remedy under 29 U.S.C. § 1132(a)(3) where employees were deprived of ERISA benefits through trickery. 516 U.S. at 515. In that case, employees were persuaded by the corporate entity to transfer to a new and insolvent subsidiary and plan. *Id.* at 492-95. They were assured by fiduciaries that their benefits would remain unchanged despite the fiduciaries' knowledge of the subsidiary's insolvency and, in fact, lost their non-pension benefits, as was to be expected. *Id. Varity* and *Blau* both recognize that the manner in which benefits are secured or removed may cause substantive harm and, thus may be remediable under § 1132(a)(1) if plan benefits are available, or under § 1132(a)(3) if they are not.

This brings us to the second problem: What remedy, if any, is available here? There seems to be little problem in providing an avenue for the payment of benefits if serious procedural errors result in the denial of benefits; and in a case such as *Varity*, where fraud is involved, the courts will go to great

---

[14]Under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), decided after *Blau*, the terms of an ERISA contract are generally construed *de novo*. The arbitrary and capricious standard continues to apply to review of benefit denials when the plan retains discretionary authority to determine eligibility. *Id.* Issues as to the standard of plan review do not affect the rule of *Blau*, which recognizes substantive relief for some procedural breaches.

lengths to find a vehicle for reinstatement of benefits via a § 1132(a)(3) equitable remedy. There is a limit, however.

In *Great-West*, the Supreme Court addressed a suit by an insurer, which sought to enforce the reimbursement provision of an ERISA plan against a plan participant by means of the equitable enforcement mechanisms of § 1132(a)(3). 534 U.S. at 208-09. In rejecting the insurer's attempt to use injunctive relief as an equitable means to secure a monetary award, the Court explained that "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* at 210 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)). Moreover, the Court distinguished between equitable claims that seek to prevent future losses, which are permissible under ERISA, and those that seek past due sums, which are not. *See id.* at 211-12.

The *Great-West* Court also rejected the insurer's argument that plaintiff's suit was authorized under § 1132(a)(3) as a claim for restitution. *See id.* at 212-18. In *Mertens v. Hewitt Associates*, the Court seemed to leave restitution as a possible equitable remedy, where available. *See* 508 U.S. 248, 255 (1993) (no § 1132(a)(3) relief against non-fiduciary). In *Great-West*, however, the Court observed that "not all relief falling under the rubric of restitution is available in equity." *See* 534 U.S. at 212. In doing so, the Court admitted that "our cases have not previously drawn this fine distinction between restitution at law and restitution at equity, but neither have they involved an issue to which the distinction was relevant." *Id.* at 214-15. The Court also concluded that equitable restitution does not impose personal liability on the defendant, but instead restores to the plaintiff particular funds or property in the defendant's possession. *See id.* at 214; *see also Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S.

238, 250 (2000) (allowing equitable restitution seeking resto-
ration of specific property not already disposed of). Thus, the
Court determined that Great-West Life could not use the equi-
table remedies of ERISA to recover a monetary damages
award. *See* 534 U.S. at 210.

   **[17]** Individual substantive relief under ERISA is available
where an employer actively and deliberately misleads its
employees to their detriment.[15] In such cases, wrongs will be
undone and means found to make benefits available, as in
*Varity*, *Blau* and *Hozier*. Even where benefits are not avail-
able under the applicable plan, "appropriate" equitable relief
may be awarded. *See, e.g.*, *Varity*, 516 U.S. at 515. Here,
however, there is no evidence of such egregious behavior.
Despite the lack of clarity regarding the original reason for
cancellation, and HBI's policy of promptly notifying its
employees in advance of benefit changes, there is no evidence
of a scheme either to hide the fact of cancellation or to affir-
matively misrepresent the facts. The uncontroverted evidence
is that the HR manager, upon learning of the earlier cancella-
tion, gave immediate notice of the cancellation to HBI
employees. There was no evidence of any intentional mislead-
ing or trickery, or of any active concealment, as in *Blau*. The
evidence is simply of negligently inadequate communications
about a policy cancellation. While the effect on Peralta may
be the same, whether the cause is deceit or merely a break-
down in the channels of communication, the culpability is not.
Equity often involves the weighing of wrongdoing as well as
of harm. Here, the wrongful conduct did not even approach
the upper end of the scale.

---

[15]*Cf. Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 113-14 (1st
Cir. 2002) (holding that administrator's technical violation of ERISA's
notice provision did not give rise to substantive remedies because there
were no extraordinary circumstances, such as bad faith, active conceal-
ment, or fraud); *accord Panaras v. Liquid Carbonics Indus. Corp.*, 74
F.3d 786, 789 (7th Cir. 1996).

**[18]** Furthermore, as indicated by the facts of this case, the only remedy sought is money damages for past harm. That remedy, however, as per *Great-West* is simply not available in equity, nor would it be "appropriate." Likewise, remand for further proceedings, to establish whether Peralta would have procured other coverage if notified in a timely fashion of the termination, cannot result in an appropriate equitable remedy under these facts. While the ERISA fiduciary had an obligation to provide timely notification to the participants of the termination of coverage, no remedy is available here. It is for Congress to provide a remedy where merely negligent administration results in the termination of coverage without timely notice, and no plan exists under which benefits may be paid.

The judgment of the district court is AFFIRMED.