**OSCEOLA BLACKWOOD IVORY GAMING GROUP, LLC,**
Plaintiff,

v.

**PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS,**
et al., Defendants.

No. 1:17–cv–00394–DAD–BAM

United States District Court,
E.D. California.

Signed 07/27/2017

Eileen R. Ridley, Foley & Lardner LLP, San Francisco, CA, Kathryn Anna Shoemaker, Kimberly A. Klinsport, Foley & Lardner LLP, Los Angeles, CA, for Plaintiff.

John Francis Nyhan, Michael A. Robinson, Fredericks Peebles & Morgan LLP, Sacramento, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Dale A. Drozd, UNITED STATES DISTRICT JUDGE

This matter came before the court on June 20, 2017, for hearing of defendants' motion to dismiss pursuant to Federal Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction. (Doc. No. 8.) Attorney Kimberly Klinsport appeared telephonically on behalf of plaintiff Osceola Blackwood Ivory Gaming Group, LLC. Attorney Michael Robinson appeared telephonically on behalf of defendants Picayune Rancheria of Chukchansi Indians and Chukchansi Economic Development Authority. For the reasons stated below, defendants' motion to dismiss will be granted.

## FACTUAL BACKGROUND

On March 16, 2017, plaintiff Osceola Blackwood Ivory Gaming Group, LLC ("OBIG"), commenced this action against defendants Picayune Rancheria of Chukchansi Indians ("Chukansi Tribe") and Chukchansi Economic Development Authority ("CEDA"). (Doc. No. 1.) Plaintiff alleges the following claims: (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; (iii) breach of oral contract; (iv) breach of implied contract; (v) fraud; (vi) violation of the California Business and Professions Code § 17200, et seq.; (vii) intentional interference with prospective economic advantage; and (viii) negligent interference with prospective economic advantage. (Id.) Plaintiff seeks an award of compensatory damages, restitutionary damages, punitive damages, and attorneys' fees and costs. (Id. at 27.)

In the complaint, plaintiff alleges the following.

Plaintiff OBIG is a Florida–based corporation that provides management and consulting services for Native American hospitality and gaming projects. (*Id.* at 2, ¶ 1.) Defendant Chukchansi Tribe is a federally recognized Native American tribe located in California, and defendant CEDA is a wholly-owned unincorporated arm of the Chukchansi Tribe that operates the tribe's gaming facility, the Chukchansi Gold Resort & Casino ("Casino"). (*Id.* at 5, ¶¶ 10–11.)

In October 2014, the Casino closed. (*Id.* at 11, ¶ 28.) Defendants subsequently began working to reopen the facility. (*Id.* at 6, ¶¶ 15–16.) On July 8, 2015, defendants contracted with plaintiff for "business consulting advice and services" related to the reopening of its casino ("the Consulting Contract"). (*Id.*) The Consulting Contract provided that the agreement would take effect upon execution, and would be effective for a term of twenty-four months or until the "facility becomes managed pursuant to a Management Agreement approved by the National Indian Gaming Commission" ("NIGC"). (*Id.* at 7, ¶ 18.) The contract also provided that defendants "expressly, unequivocally and irrevocably waive their sovereign immunity" for "any legal proceeding with respect to the Consulting Agreement, or any of the transactions contemplated in the Consulting Agreement." (*Id.* at 7, ¶ 19.) The Tribal Council for the Chukchansi Tribe approved the agreement by adopting Resolution No. 2015–31. (*Id.* at 6, ¶ 15.)

On the same day the parties entered into the Consulting Contract, the parties also orally agreed to enter into a Management Agreement, and defendants promised to promptly submit the Management Agreement to the NIGC for approval. (*Id.* at 7–8, ¶¶ 20–21.)

On July 29, 2015, defendants entered into the Management Agreement with plaintiff, which agreement the Chukchansi Tribal Council approved by adopting Resolution No. 2015–46. (*Id.* at 8, ¶ 21.) The contract stated that it had a term of five years, and would take effect five days after the following conditions were met: (i) the Chairman of the NIGC granted written approval of the contract; (ii) the Chukchansi Tribe and NIGC concluded background investigations of plaintiff; and (iii) plaintiff received all applicable licenses and permits for the facility. (*Id.* at 8, ¶¶ 22–23.) Additionally, the contract provided that the Chukchansi Tribe would waive sovereign immunity for any actions filed by plaintiff to enforce the terms of the contract, and that the Chukchansi Tribal Council would enact a resolution adopting this waiver. (*Id.* at 8, ¶ 24.)

From July to December 2015, plaintiff provided management and consulting services to defendants. (*Id.* at 9–10, ¶ 26.) The Casino reopened on December 31, 2015. (*Id.* at 10, ¶ 27.) In April 2016, the parties agreed to amend the Management Agreement to adjust plaintiff's compensation rate and to extend the term of the agreement from five to seven years. (*Id.* at 11, ¶ 29.) Defendants also agreed to submit a revised version of the agreement to the NIGC for approval. (*Id.* at 11, ¶ 29.) To date, defendants have failed to submit either the original Management Agreement or the proposed amended agreement to the NIGC. (*Id.* at 12, ¶ 30.) As a result of defendants' failure to submit either the agreement or the revised agreement to the NIGC for approval, plaintiff has experienced financial loss. (*Id.* at 12, ¶¶ 30–31.)

On May 10, 2017, defendants filed the instant motion to dismiss plaintiff's complaint in its entirety based on this court's lack of subject matter jurisdiction. (Doc. No. 8.) Plaintiff filed its opposition on June

6, 2017, together with a request for judicial notice. (Doc. Nos. 12–13.) On June 13, 2017, defendants filed a reply. (Doc. No. 14.)

## LEGAL STANDARD

Defendants move to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1).

■ Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific claims alleged in the action. *See* Fed. R. Civ. P. 12(b)(1); *see generally* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Federal district courts generally have subject matter jurisdiction over civil cases through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064 (9th Cir. 2005). In a motion to dismiss for lack of subject jurisdiction, a defendant may either attack the allegations of the complaint or the existence of subject matter jurisdiction in fact. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

■ Here, defendants argue that the allegations of the complaint are insufficient to support federal subject matter jurisdiction. (Doc. No. 8.) When a party brings a facial attack to subject matter jurisdiction, that party contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. *See*

*Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Accordingly, the factual allegations of the complaint are presumed to be true, and the motion may be granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003); *Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). Nonetheless, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" when resolving a facial attack. *Safe Air for Everyone*, 373 F.3d at 1039.

## ANALYSIS

As indicated, defendants move to dismiss plaintiff's complaint in its entirety, arguing that this court lacks original jurisdiction over any of plaintiff's claims, and that there are no grounds for the exercise of supplemental jurisdiction absent original jurisdiction. (Doc. No. 8 at 11.) Below, the court will address the parties' requests for judicial notice before analyzing defendants' arguments in support of their motion to dismiss.

### A. Requests for Judicial Notice

■ In the motion to dismiss, defendants request that the court take judicial notice of the following: (i) the Chukchansi Tribe's Constitution (Doc. No. 9–1); (ii) Tribal Resolution No. 2001–11 creating the CEDA (Doc. No. 9–2); (iii) the Gaming Compact between the Chukchansi tribe and the State of California, establishing requirements for tribal agreements with suppliers of "Gaming Resources," and requiring any gaming resource suppliers to be licensed by the Tribal Gaming Agency (Doc. No. 9–3); and (iv) the list of gaming

suppliers authorized by the Tribal Gaming Agency to contract with the tribe (Doc. No. 8 at 15 n.2). In its opposition to the pending motion to dismiss, plaintiff also requests that the court take judicial notice of a document published by the NIGC, Regulation 533 Checklist for New Management Contracts. (Doc. No. 13 at 2.) Because the court need not and does not rely on any of these documents in resolving defendants' motion to dismiss, the court declines to take judicial notice of them items at this time. *See City of Royal Oak Retirement Sys. v. Juniper Networks, Inc.,* 880 F.Supp.2d 1045, 1050 (N.D. Cal. 2012); *see generally* Fed. R. Civ. P. 201.

### B. Subject Matter Jurisdiction

Defendants move to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

As noted above, federal district courts generally have subject matter jurisdiction over civil cases through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. *See Peralta v. Hispanic Bus., Inc.,* 419 F.3d 1064 (9th Cir. 2005). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law pursuant to § 1331 if the cause of action (i) is created by federal law, or (ii) necessarily requires resolution of a substantial question of federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005); *see also Empire Healthchoice Assurance, Inc. v. McVeigh,*

547 U.S. 677, 699, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006); *Peabody Coal Co. v. Navajo Nation,* 373 F.3d 945, 949 (9th Cir. 2004).

To determine whether a cause of action is created by federal law, courts typically apply the "well-pleaded complaint" rule. *Rainero v. Archon Corporation,* 844 F.3d 832, 836–37 (9th Cir. 2016); *California v. United States,* 215 F.3d 1005, 1014 (9th Cir. 2000). The "well-pleaded complaint" rule establishes that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Id.*; *see also California ex rel. Lockyer v. Dynegy, Inc.,* 375 F.3d 831, 838 (9th Cir. 2004). "A defense is not part of a plaintiff's pleaded statement of his or her own claim." *Dynegy, Inc.,* 375 F.3d at 838 (quoting *Rivet v. Regions Bank,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998)); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.,* 582 F.3d 1083, 1091 (9th Cir. 2009).

The "well-pleaded complaint" rule is subject to several exceptions. *See Hall v. N. Am. Van Lines, Inc.,* 476 F.3d 683, 687 (9th Cir. 2007) (citing *Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 668 (9th Cir. 1993)). One exception is the "artful pleading doctrine." *See Smallwood v. Allied Van Lines, Inc.,* 660 F.3d 1115, 1120 (9th Cir. 2011); *Hall,* 476 F.3d at 687. Under the "artful pleading" doctrine, "a well-pleaded state law claim nonetheless presents a federal question when a federal statute has completely preempted that particular area of law."[1] *Hall,* 476 F.3d at

---

1. Complete preemption is distinguishable from ordinary defensive preemption. *See Sullivan v. American Airlines, Inc.,* 424 F.3d 267, 272–73 (2d Cir. 2005). Where there is ordinary defensive preemption, the substantive law to be applied in the action is federal law,

and state law is displaced. *See id.* ("Ordinary defensive preemption comes in three familiar forms: express preemption, conflict preemption, and field preemption."). Where there is complete preemption, an action commenced in state court may be removed on the basis of

687; *see also Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003); *Losel Chase Bank USA, NA*, No. CIV-S-11-1999 KJM-DAD, 2012 WL 3778960, at *3 (E.D. Cal. Aug. 31, 2012) (citing *Lippitt*, 340 F.3d at 1041). The rationale for this doctrine is that "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Hall*, 476 F.3d at 687; *see also Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000). Thus, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Lippitt*, 340 F.3d at 1041 (quoting *Franchise Tax Board of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

 As noted above, federal question jurisdiction may also exist if a claim necessarily requires resolution of a substantial question of federal law. *See Peabody Coal Co.*, 373 F.3d at 949. A state law claim implicates substantial questions of federal law if the federal issue is (i) necessarily raised, (ii) actually disputed, (iii) substantial, and (iv) capable of resolution in a federal court without disrupting the federal-state balance of power. *See Gunn v. Minton*, 568 U.S. 251, 251, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013); *see also Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674 (9th Cir. 2012).

In their motion to dismiss, defendants argue that the court lacks subject matter jurisdiction because the parties are not diverse, and because the complaint does not present a federal question. (Doc. No. 8 at 11–15.) In its opposition, plaintiff argues that the complaint presents a federal question because: (i) plaintiff's claims are subject to complete preemption by the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 ("IGRA"), a federal law that regulates the operation of gaming by Native American tribes; and (ii) plaintiff's claims necessarily require resolution of substantial questions of federal law, since they hinge on whether failure to submit a Management Agreement to the NIGC as required by the IGRA constitutes breach of contract and fraud. (Doc. No. 12 at 7.)

The parties do not dispute that diversity jurisdiction is inapplicable. (Doc. No. 12 at 17, n.4.) The court will therefore focus its analysis on whether the plaintiff's claims arise under federal law pursuant to 28 U.S.C. § 1331.

Plaintiff does not assert any federal causes of action in its FAC but rather alleges only claims under California state law. (Doc. No. 1.) As such, the FAC is only subject to federal court jurisdiction if it presents state law claims subject to complete preemption, or if resolution of the state law claims implicates a substantial

federal question jurisdiction, and is considered to arise under federal law. *See id.* Complete preemption occurs when a federal law both (i) conflicts with state law, and (ii) provides remedies that displace state law remedies. *See Botsford v. Blue Cross and Blue Shield of Mont., Inc.*, 314 F.3d 390, 393 (9th Cir. 2002). "Complete preemption is rare." *ARCO Envt'l Remediation, L.L.C., v. Dep't of Health & Envt'l Quality*, 213 F.3d 1108, 1115 (9th Cir. 2000). The Supreme Court has identified only three federal statutes that completely preempt well-pleaded state law claims:

Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; Section 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a); and Sections 85 and 86 of the National Bank Act of 1864, as amended, 12 U.S.C. §§ 85, 86. *See Hall*, 476 F.3d at 687 n.3 (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)); *see also Coyle v. O'Rourke*, No. LA CV14-07121 JAK (FFMx), 2015 WL 58700, at *6 (C.D. Cal. Jan. 5, 2015).

question of federal law. *See Hall*, 476 F.3d at 687.

 Contrary to plaintiff's contentions, there is little guidance from the Ninth Circuit as to whether the doctrine of complete preemption applies to the IGRA. *See Runyan v. River Rock Entm't Auth.*, No. C 08-1924 VRW, 2008 WL 3382783, at \*4 (N.D. Cal. Aug. 8, 2008) ("[T]he Ninth Circuit has not held that the IGRA completely preempts state law and it is not clear that the Ninth Circuit would do so."). While the Ninth Circuit has considered the doctrine of ordinary defensive preemption under the IGRA, it has not directly addressed whether the statute has complete preemptive effect over state law claims. *See, e.g., Confederated Tribes of Siletz Indians of Or. v. Oregon*, 143 F.3d 481, 486 n.7 (9th Cir. 1998); *Cabazon Band of Mission Indians v. Wilson*, 37 F.3d 430 (9th Cir. 1994).[2]

The Eighth Circuit and a number of district courts have found that the IGRA completely preempts state law claims, but only in certain circumstances. *See Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996) ("The term 'complete preemption' is somewhat misleading because even when it applies, all claims are not necessarily covered."); *see also Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1105 (8th Cir. 1999). Specifically, these courts have found that complete preemption applies in this context only if state law claims interfere with processes mandated and regulated by the IGRA—i.e., tribal governance of gaming on Native lands, or tribal decisions as to which gaming activities are allowed on Native territories. *See Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1105 (8th Cir. 1999) (explaining that state law claims are only preempted if they interfere with processes mandated and regulated by the IGRA); *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 & 549 (8th Cir. 1996) (stating that complete preemption is limited to "[a]ny claim which would directly affect or interfere with a tribe's ability to conduct its own [gaming] licensing process"); *Alabama v. PCI Gaming Auth.*, 15 F.Supp.3d 1161, 1171 (M.D. Ala. 2014) ("IGRA completely preempts the state law claim in Count One if that claim interferes with the Poarch Band's governance of gaming on Indian lands."); *First Am. Casino Corp. v. E. Pequot Nation*, 175 F.Supp.2d 205, 209 (D. Conn. 2000); *see generally County of Madera v. Picayune Rancheria of the Chukchansi Indians*, 467 F.Supp.2d 993, 1001–1002 (E.D. Cal. 2006) (" '[G]aming activity' would seem to be the actual playing or provision of the games identified [in the

---

**2.** Some district courts in this circuit have suggested that Ninth Circuit precedent implicitly rejects the applicability of complete preemption to the IGRA. *See Runyan*, 2008 WL 3382783, at \*4 ("[The Ninth Circuit has] analyzed the question whether IGRA preempts state taxation of offtrack betting on Indian reservations by balancing federal, tribal and state interests.... [but] such balancing would not have been necessary if the court had concluded that IGRA completely preempted state law"); *see also Keim v. Harrah's Operating Co.*, No. 09cv1732 BTM (AJB), 2010 WL 28536, at \*1–2 (S.D. Cal. Jan. 5, 2010); *Kersten v. Harrah's Casino–Valley Ctr.*, No. 07cv0103 BTM(JMA), 2007 WL 951342, at \*2 (S.D. Cal. Feb. 27, 2007). These courts have relied on Ninth Circuit decisions addressing ordinary defensive preemption. However, because the doctrines of complete preemption and ordinary preemption are distinct, the Ninth Circuit's past analysis of ordinary preemption under the IGRA does not provide clear guidance on the issue of complete preemption. *See Sullivan*, 424 F.3d at 274 (warning against conflation of these two doctrines); *see generally* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction § 3722.1 (3d ed. 1998) (describing the difference between complete and ordinary preemption as "a difference in kind").

IGRA] and/or the necessary conduct associated with playing or providing the identified games.").[3]

Here, even assuming that the doctrine of complete preemption applies to the IGRA, plaintiff has not met its burden to show that its claims fall within the statute's preemptive scope. In its complaint, plaintiff alleges state law claims based on breach of contract, fraud, violation of the California Business and Professions Code § 17200, and tortious interference with prospective economic advantage. (Doc. No. 1.) The basis of plaintiff's state law claims is that defendants failed to submit a casino management contract to the NIGC for approval despite having agreed to do so. (Doc. No. 1 at 12, ¶ 30.) Plaintiff asserts that resolution of these claims involves fact-intensive inquiries into the formation and construction of the Management Agreement, which will necessarily involve

analysis of the federal IGRA. (Doc. No. 12 at 7.) However, based on the allegations of the complaint, it does not appear that plaintiff's claims "interfere[ ] with or [are] incompatible with IGRA." *Manoukian v. Harrah's Entm't, Inc.*, No. 11cv503-L(JMA), 2011 WL 1343009, at *2 (S.D. Cal. Apr. 7, 2011). Plaintiff does not articulate how its claims would affect the tribe's ability to govern gaming on Native territory, or interfere with its decisions about which gaming activities to permit in the Casino. *See County of Madera*, 467 F.Supp.2d at 1002–1002. Unlike those cases where courts have found state law claims completely preempted by the IGRA, plaintiff's claims in this action do not challenge the validity of a contract under the IGRA or the scope of tribal authority to conduct gaming on Native territory.[4] *See, e.g., Gaming Corp. of Am.*, 88

---

**3.** District courts in the Ninth Circuit have looked to Eighth Circuit decisions when considering challenges to subject matter jurisdiction based on complete preemption under the IGRA. *See, e.g., Runyan v. River Rock Entm't Auth.*, No. C 08-1924 VRW, 2008 WL 3382783, at *4 (N.D. Cal. Aug. 8, 2008). These district courts have declined to directly address the nature of the IGRA's preemptive force, and have found that even if the IGRA has complete preemptive effect over certain state law claims, the claims at issue would not fall within the scope of that doctrine. *See Runyan*, 2008 WL 3382783, at *4; *see also Keim*, 2010 WL 28536, at *1–2; *Kersten*, 2007 WL 951342, at *2; *County of Madera*, 467 F.Supp.2d at 1001–1002. In contrast, a number of decisions from California courts have concluded that the IGRA completely preempts state law claims based on Eighth Circuit precedent. *See Hotel Emps. and Rests. Emps. Intern. Union v. Davis*, 21 Cal.4th 585, 621, 88 Cal.Rptr.2d 56, 981 P.2d 990 (1999) ("[T]he Legislature would not otherwise have the power to authorize or prohibit lotteries or gambling casinos because federal law completely preempts the field of Indian gambling."); *Am. Vantage Cos. v. Table Mountain Rancheria*, 103 Cal.App.4th 590, 596, 126 Cal. Rptr.2d 849 (2002); *Great Western Casinos*,

*Inc. v. Morongo Band of Mission Indians*, 74 Cal.App.4th 1407, 1426, 88 Cal.Rptr.2d 828 (1999). These state court decisions, however, do not control here because federal law as determined by federal courts governs questions of federal preemption. *See Mackey v. Lanier Collection Agency*, 486 U.S. 825, 830–31, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *see also Board of Trustees of Cement Masons & Plasterers Health & Welfare Trust v. GBC Northwest, LLC*, No. C06-1715 C, 2007 WL 1521220, at *2 (W.D. Wash. May 22, 2007).

**4.** To the extent that the defendant Tribe disputes the validity of the management contract absent NIGC approval, this is a defense to plaintiff's claims, which cannot form the basis for subject matter jurisdiction. *See Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 207 F.3d 488, 489 (8th Cir. 2000) ("IMCI's anticipatory contention that the Tribe may invoke the provisions of IGRA as a defense is insufficient to confer federal question jurisdiction on this court."); *see also Rumsey Indian Rancheria of Wintun Indians of Cal. v. Dickstein*, No. 2:07-cv-02412-GEB-EFB, 2008 WL 648451, at *4–6 (E.D. Cal. Mar. 5, 2008) (rejecting plaintiff's arguments that the IGRA completely preempted plaintiff's claims for breach of fiduciary duties,

F.3d at 549–50 ("[C]laims based on [a private law firm's] duty to the nation during the [casino management] licensing process would appear to fall within the scope of IGRA's complete preemption doctrine"); *Alabama v. PCI Gaming Auth.*, 15 F.Supp.3d 1161, 1171 (M.D. Ala. 2014) (finding complete preemption of plaintiff's state law nuisance claims seeking to enjoin allegedly illegal gaming on Native American lands).

Accordingly, to the extent that the doctrine of complete preemption applies to the IGRA, plaintiff's claims do not fall within the statute's preemptive scope. *Kersten*, 2007 WL 951342, at *2; *see also Seely v. Harrah's Rincon Casino*, No. 11 CV 0594 MMA (MDD), 2011 WL 2601019, at *2 (S.D. Cal. June 30, 2011) (finding that plaintiff's state law claims for property damage and loss of use were not completely preempted by the IGRA because they did not interfere with the tribe's governance of gaming activities); *Keim*, 2010 WL 28536, at *2–3; (explaining that even if complete preemption applied to the IGRA, plaintiff's tort claims were not subject to complete preemption because they did not "potentially infringe on [the] tribe's governance of gaming"); *Runyan*, 2008 WL 3382783, at *4 ("[I]t is far from clear that the state law at issue here—generally applicable employment and contract claims—fall within the scope of the complete preemption doctrine."); *County of Madera*, 467 F.Supp.2d at 1001–1002 (holding that even if the Ninth Circuit agreed with the Eighth Circuit's IGRA complete preemption analysis, the County's nuisance abatement claim against the Tribe was not completely preempted be-

breach of contract, and violation of § 17200, because "[t]his argument concerns fact-bound questions regarding the nature of the agreements at issue … but it does not establish that these determinations interfere with the Tribe's ability to govern gaming."); *see gener-*

cause it did not interfere with the Tribe's governance of gaming activities or interfere with the Tribe's decisions as to which gaming activities are allowed); *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F.Supp.2d 1061, 1067 (N.D. Cal. 2005) (rejecting defendant's argument that the IGRA completely preempted plaintiff's claim for tortious interference with contract because "Plaintiff could prove [the claim] without implicating the decision-making process of the tribe").

■ Having concluded that the FAC does not allege causes of action created by federal law, the court next considers whether plaintiff's claims implicate "a substantial question of federal law" sufficient to trigger subject matter jurisdiction under 28 U.S.C. § 1331.

■ To determine whether a state law claim raises a substantial federal question, courts must "examine the particular facts of the claim asserted." *Peabody Coal Co.*, 373 F.3d at 949; *see also Arizona Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128, 1129–30 (9th Cir. 1995) (finding a federal question was presented because the case involved a determination of whether a federal tribe exceeded its authority by regulating the employment policies of a commercial entity doing business on tribal lands). The Ninth Circuit has found that state law claims related to contracts with Native American tribes raise substantial federal questions when they involve the following issues: the scope of a tribal government's authority, the applicability of tribal law to non-Native entities, or the validity of federally-regulated contracts.

*ally K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 (9th Cir. 2011) ("Federal jurisdiction cannot hinge upon defenses or counterclaims, whether actual or anticipated").

*See Peabody Coal Co.*, 373 F.3d at 949 ("In cases from other jurisdictions involving contracts between Native sovereigns and non-Natives, the federal question in each case was either a tribal government's authority to apply tribal law to the commercial activities of non-Indian companies, or the validity of mineral leases themselves."); *see also Comstock Oil & Gas, Inc. v. Ala. & Coushatta Indian Tribes of Tex.*, 261 F.3d 567, 569 (5th Cir. 2001) (identifying a federal question for subject matter jurisdiction purposes when a tribe sought to have mineral lease agreement with an oil company declared void in its tribal court); *Superior Oil Co. v. United States*, 798 F.2d 1324, 1328–29 (10th Cir. 1986) (identifying a federal question under 28 U.S.C. § 1331 because plaintiff's claims required resolution of the question of whether the Navajo tribe exceeded its authority under the IMLA by withholding approval of oil and gas lease assignments). However, a state law claim does not raise a substantial federal question simply because it involves a contract that is subject to federal regulation and approval. *See Peabody Coal Co.*, 373 F.3d at 949; *see also Harris v. San Manuel Band of Mission Indians*, EDCV 14–02365 SJO (DTBx), 2015 WL 12791503, at *2 (C.D. Cal. Apr. 29, 2015) (discussing an employment contract not governed by the IGRA). Thus, state law claims that simply "center[ ] upon the contract and its construction rather than the [federal] statutory basis for the contract" do not present federal questions. *Littell v. Nakai*, 344 F.2d 486, 487–88 (9th Cir. 1965).

As noted above, plaintiff here seeks to vindicate rights it claims exist under Cali-

fornia contract and tort law. Plaintiff's claims are not based on a dispute concerning the validity of the Management Agreement. *See Littell*, 344 F.2d at 487–88; *see also Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752–53 (2d Cir. 1996) ("What remains of the plaintiff's complaint without the issue of the franchise agreement's validity ... is a cause of action sounding in contract that arises solely under state law"); *Harris*, 2015 WL 12791503, at *2 (finding that plaintiff's claims implicated federal questions when a contested issue asserted in the complaint was whether the document was a management contract governed by the IGRA). Moreover, plaintiff's complaint does not allege an existing dispute about asserted tribal court jurisdiction or authority. *See Peabody Coal Co.*, 373 F.3d at 949–50; *Jefferson State Bank v. White Mountain Apache Tribe*, No. CV 11-8100-PCT-PGR, 2011 WL 5833831, at *2–3 (D. Ariz. Nov. 21, 2011); *cf. Comstock Oil & Gas, Inc.*, 261 F.3d at 569; *Superior Oil Co.*, 798 F.2d at 1328–29.

The court therefore concludes that the addressing of plaintiff's claims does not require resolution of a substantial question of federal law, and that the court therefore lacks original jurisdiction over any claims asserted in plaintiff's complaint. Absent original jurisdiction over any claim, the court cannot assert supplemental jurisdiction over plaintiff's state law causes of action. *See* 28 U.S.C. § 1367(a). Accordingly, defendants' motion to dismiss will be granted.[5]

## CONCLUSION

For the reasons stated above:

---

**5.** In their motion to dismiss, defendants argue that even if federal question jurisdiction exists, the complaint should be dismissed on tribal sovereign immunity grounds. (Doc. No. 8 at 17.) Plaintiffs contend in their opposition that defendants waived sovereign immunity in

the Management Agreement. (Doc. No. 12 at 7.) Having found that subject matter jurisdiction is lacking, the court need not address the issue of sovereign immunity and whether defendants properly waived immunity in the Management Agreement.

1. Defendants' motion to dismiss (Doc. No. 8) is granted;

2. This action is dismissed;

3. All previously scheduled dates in this action are vacated; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.